972 So.2d 905 (2007)
In re GUARDIANSHIP OF Joseph Scott MORRISON a/k/a J. Scott Morrison.
Catharine S. Bogert, Appellant,
v.
Cynthia L. Morrison, as Guardian Joseph Scott Morrison a/k/a J. Scott Morrison, Appellee.
No. 2D06-4343.
District Court of Appeal of Florida, Second District.
November 28, 2007.
Rehearing Denied February 4, 2008.
*906 David A. Wallace and Stacy J. Borisov of Williams Parker Harrison Dietz & Getzen, Sarasota, for Appellant.
James L. Essenson and Barbara J. Welch of Law Firm of James L. Essenson, Sarasota, for Appellee.
STRINGER, Judge.
This case involves competing petitions for appointment of a guardian over the person and property of Joseph Scott Morrison. Mr. Morrison's longtime companion and girlfriend, Catharine S. Bogert, filed a petition in New Jersey, where she and Mr. Morrison were living at the time he was rendered incapacitated. Mr. Morrison's daughter, Cynthia Morrison, filed a petition in Florida, where Mr. Morrison had been relocated subsequent to his becoming incapacitated. Bogert seeks review of three orders that (1) appoint Cynthia as the plenary guardian of the person of Mr. Morrison, (2) appoint Cynthia as the plenary guardian of the property of Mr. Morrison, and (3) deny Bogert's motion to dismiss or stay the Florida action. We reverse based on our determination that the Florida court abused its discretion in refusing to stay the Florida proceedings based on the principle of comity.
Mr. Morrison, who is seventy-one years old, was rendered incapacitated after he fell and struck his head while on vacation with Bogert in Reno in February 2006. Mr. Morrison returned to New Jersey, where he lived with Bogert, and remained *907 there under in-home care until his adult children removed him and took him to Florida in April 2006. The children did this without Bogert's consent or knowledge.
On April 25, 2006, Bogert filed a complaint for guardianship and other relief in New Jersey. The complaint sought an injunction requiring Mr. Morrison's return to New Jersey, an order setting aside a power of attorney that Mr. Morrison had given Cynthia the month before, an evaluation of Mr. Morrison's incapacity, and appointment of a guardian of Mr. Morrison's property and person. On May 18, the New Jersey court issued an order to show cause, which also required that Mr. Morrison be made available for mental capacity examinations, allowed Cynthia to continue to manage Mr. Morrison's assets, granted Bogert visitation in Florida, and set forth a briefing schedule on the issue of Bogert's standing and jurisdiction. Mr. Morrison's children appeared for the New Jersey proceedings through counsel and were included in the briefing schedule.
Nonetheless, on June 2, Cynthia filed several petitions seeking substantially the same relief in a Florida probate court: (1) a petition for determination of incapacity, (2) a petition for appointment of plenary guardian of Mr. Morrison's property, (3) a petition for appointment of plenary guardian of Mr. Morrison's person, and (4) a petition for appointment of emergency temporary guardian of Mr. Morrison's person and property. That day, the Florida court issued an order and letters of emergency guardianship appointing Cynthia as emergency temporary guardian of Mr. Morrison's person and property.
On June 12, Bogert appeared in the Florida proceedings and filed her own petitions for appointment of plenary guardians of Mr. Morrison's person and property. Bogert also filed motions requesting that the court dismiss the petitions, set aside the letters of guardianship, or hold the Florida actions in abeyance pending resolution of the New Jersey action. On June 20, the Florida court denied Bogert's motions and entered an order determining total incapacity.
In the meantime, the parties submitted their briefs to the New Jersey court pursuant to the briefing schedule. On June 29, the New Jersey court held a hearing to determine the issues of standing and jurisdiction. Mr. Morrison's children were represented by counsel, who argued that the New Jersey court lacked jurisdiction and that Bogert lacked standing. On June 30, the New Jersey court issued an order holding that Bogert had standing and that the New Jersey court had jurisdiction because Mr. Morrison was a domiciliary of New Jersey.
On August 9, Bogert filed, in Florida, a request for judicial notice and a motion to dismiss the petitions filed in Florida based on the New Jersey court's recent order on standing and jurisdiction. Bogert requested that the Florida court dismiss the petitions, revoke the appointment of the emergency temporary guardian, and enter an order directing the transport of Mr. Morrison back to New Jersey. Bogert alternatively requested a stay of the Florida proceedings based on the principle of priority.[1] The Florida court rendered an order denying the request and motion on August 29. The Florida court concluded that "[t]he New Jersey judgment on jurisdiction has no impact on this court taking and maintaining jurisdiction over the matter." The Florida court subsequently issued final orders appointing Cynthia as *908 plenary guardian of the person and property of Mr. Morrison.
On appeal, Bogert argues that the Florida court abused its discretion in refusing to stay the Florida proceedings based on the principle of priority. Bogert argues that because the New Jersey proceedings were filed first and the New Jersey court exercised jurisdiction first, the Florida court should have applied the principle of priority and stayed its actions as a matter of comity. Cynthia argues that the principle of priority does not apply because the Florida court was the first to exercise jurisdiction and the subject matter of the actions and the parties is not similar enough. Cynthia also argues that even if the principle of priority applies, the Florida court did not abuse its discretion in declining to apply it as a matter of comity.
A. Whether the Principle of Priority Applies.
If courts in different states have concurrent jurisdiction over a matter, then the proper court is determined by either legislation or the principle of comity. Philip J. Padovano, Civil Practice § 1.7 (2007). In this case, there is no legislation governing the subject of concurrent jurisdiction over guardianship proceedings, so the principle of priority governs as a matter of comity.
In general, where courts within one sovereignty have concurrent jurisdiction, the court which first exercises its jurisdiction acquires exclusive jurisdiction to proceed with that case. This is called the "principle of priority." Admittedly, this principle is not applicable between sovereign jurisdictions as a matter of duty. As a matter of comity, however, a court of one state may, in its discretion, stay a proceeding pending before it on the grounds that a case involving the same subject matter and parties is pending in the court of another state.
Siegel v. Siegel, 575 So.2d 1267, 1272 (Fla. 1991) (quoting Bedingfield v. Bedingfield, 417 So.2d 1047, 1050 (Fla. 4th DCA 1982)). The purpose of applying the principle of priority as a matter of comity is to prevent "unnecessary and duplicitous lawsuits" that "would be oppressive to both parties." Siegel, 575 So.2d at 1272 (quoting Bedingfield, 417 So.2d at 1050).
Cynthia argues that the principle of priority does not apply because the Florida court was the first to exercise jurisdiction when it issued its order and letters of emergency guardianship on June 2, 2006. Bogert acknowledges the supreme court's holding in Siegel that priority should be given to "the court which first exercises its jurisdiction." Bogert argues that the majority of Florida decisions grant priority to the action that was first filed.[2] However, Bogert cites to district court cases, and the supreme court has never receded from Siegel. Furthermore, none of the district court cases cited by Bogert actually rule on the question of whether filing, as opposed to the exercise of jurisdiction, triggers priority. Thus, there is no reasonable basis to conclude that the trigger for priority is anything but the exercise of jurisdiction as was stated by the supreme court in Siegel.
Bogert alternatively argues that the New Jersey court first exercised jurisdiction on May 18, 2006, when it issued the order to show cause. This order required Mr. Morrison's children to show cause why *909 the requested relief should not be granted. It also required that Mr. Morrison be made available for mental capacity examinations, allowed Cynthia to continue to manage Mr. Morrison's assets, granted Bogert visitation, and set forth a briefing schedule on the issue of Bogert's standing and jurisdiction. Cynthia argues that the show cause order did not constitute an exercise of jurisdiction because the order was issued without prejudice to a determination of standing and jurisdiction, and the issues of standing and jurisdiction were not determined until after the Florida court acted.
It is true that no Florida court appears to have addressed the question of exactly what the supreme court meant by the term "the court which first exercises its jurisdiction" in Siegel, However, this case is analogous to another case from this court in which we held that the principle of priority applied. See Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Ainsworth, 630 So.2d 1145 (Fla. 2d DCA 1993).
In Merrill Lynch, some of Merrill Lynch's customers instituted arbitration proceedings in New York against Merrill Lynch with the National Association of Securities Dealers, Inc. ("NASD"), alleging that Merrill Lynch committed fraud in selling the customers units in limited partnerships. Id. at 1146. In response, Merrill Lynch filed a special action in New York state court seeking a stay of the arbitration while the court determined the arbitrability of the claims. The New York court issued an ordered to show cause why the stay should not be granted and served the order on the customers' attorney.
After the show cause order was served, the customers filed a lawsuit in Florida asserting the same claims that they submitted to arbitration in New York. Id. at 1147. The customers also sought to have Merrill Lynch enjoined from pursuing the New York action, arguing that the New York court did not have personal jurisdiction. In response, Merrill Lynch filed a motion to stay or abate the Florida proceedings pending resolution of the New York proceedings. The Florida court denied the motion to stay, but this court reversed. This court held that the Florida court should have granted the stay because the New York court exercised jurisdiction first. The court noted that there Were no special circumstances that would have justified denying the stay.
Thus, the court in Merrill Lynch determined that the out-of-state court was the first to "exercise jurisdiction" by issuing an order to show cause before the Florida court acted. Additionally, as in this case, there were unresolved questions regarding the out-of-state court's jurisdiction, but those questions did not bear on this court's decision that the principle of priority applied. This holding is logical because when a court issues an order to show cause, the court is saying that it intends to grant relief unless the opposing party can convince it otherwise. The ball is rolling, so to speak, and will not be stopped until the court issues an order or the plaintiff dismisses the lawsuit.
We agree with Bogert that the New Jersey court first exercised jurisdiction on May 18, 2006, when it issued the order to show cause. Accordingly, we reject Cynthia's argument that the principle of priority does not apply because the Florida court was the first to exercise jurisdiction.
Cynthia also argues that the principle of priority does not apply because the subject matter of the actions and the parties is not similar enough. The principle of priority applies "`[w]here two actions are pending between the same parties involving the same state of facts and aiming to accomplish substantially the same result." Solomon v. Gordon, 148 Fla. 572, 4 So.2d 710, 711 (1941) (quoting 1 *910 C.J. page 1162, paragraph 420). A stay does not require complete identity of both the parties and the causes of action, but requires a substantial similarity of the parties and actions. Sauder v. Rayman, 800 So.2d 355, 358 (Fla. 4th DCA 2001); Polaris Pub. Income Funds v. Einhorn, 625 So.2d 128, 129 (Fla. 3d DCA 1993). This involves a determination of whether the out-of-state action is "so similar in parties and issues as to be unnecessarily duplicative" of the in-state proceedings. Polaris, 625 So.2d at 129. "[I]t is sufficient that the two actions involve a single set of facts and that resolution of the one case will resolve many of the issues involved in the subsequently filed case." Fla. Crushed Stone Co. v. Travelers Indem. Co., 632 So.2d 217, 220 (Fla. 5th DCA 1994).
In this case, both actions stemmed from a head injury Mr. Morrison suffered while on vacation. Both actions sought a determination of Mr. Morrison's incapacity and the appointment of a guardian over the person and property of Mr. Morrison. Additionally, both actions required a determination of the propriety of Mr. Morrison remaining in Florida. Clearly, the two actions involve the same set of facts and resolution of one will resolve many of the issues involved in the other.
Cynthia argues that a more stringent identity test applies because Bogert did not merely seek a stay, but also sought a dismissal, vacation of all orders, and entry of an order directing the return of Mr. Morrison to New Jersey. Cynthia argues that Bogert's motion sought the equivalent of an abatement of the Florida action. However, as we read Bogert's argument in the initial brief, she is not appealing the denial of her request for dismissal, vacation of all orders, and entry of an order directing the return of Mr. Morrison to New Jersey. Bogert's argument only relates to the trial court's ruling denying Bogert's request for a stay. A reversal of that order would require the vacation of the court's orders entered subsequent to its denial of Bogert's motion to dismiss or stay, but it would not require entry of a dismissal or an order directing the transport of Mr., Morrison.
B. Whether the Florida Court Abused its Discretion in Declining to Apply the Principle of Priority.
Although the principle of priority is discretionary, a trial court should stay proceedings when prior proceedings are pending in a court of another state unless there are special circumstances that would justify a denial of the stay. Siegel, 575 So.2d at 1272. Thus, absent any such special circumstances, a trial court abuses its discretion in refusing to grant a stay based on the principle of priority. Norris v. Norris, 573 So.2d 1085, 1086 (Fla. 4th DCA 1991). The most common example of such special circumstances is undue delay by the court with priority. See Siegel, 575 So.2d at 1272; Parker v. Estate of Beater, 890 So.2d 508, 512 (Fla. 4th DCA 2005); Norris, 573 So.2d at 1086. At least one court has found special circumstances in a dissolution action when primary residences, property, business interests, and most of the parties' children were in Florida. See Maraj v. Maraj, 642 So.2d 1103, 1104 (Fla. 4th DCA 1994).
In this case, the Florida court did not make any findings of special circumstances to explain its decision not to apply the principle of priority as a matter of comity. Instead, the court found that the New Jersey judgment on jurisdiction has no impact on the Florida court's jurisdiction over the matter. However, .the parties do not dispute that the Florida and New Jersey courts have concurrent jurisdiction. Instead, the question is whether the Florida court abused its discretion in refusing to stay the Florida, guardianship proceedings *911 while the New Jersey guardianship proceedings went forward.
Although the Florida court had the discretion to decline to stay the Florida proceedings as a matter of comity, it abused its discretion in doing so absent a finding of special circumstances. We recognize that cases involving competing petitions for guardianship can be contentious, but it is important for courts to focus on the incapacitated ward's need for a dispassionate resolution of the jurisdictional issues that could affect the ward's medical care and property. Accordingly, we reverse the orders appointing Cynthia, as the plenary guardian of Mr. Morrison's person and property and denying Bogert's motion for a stay. We remand for entry of an order granting Bogert's motion to stay the proceedings pending resolution of the New Jersey proceedings.
Reversed and remanded.
KELLY, J., Concurs.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I concur in this opinion, but write to explain that I would reverse this case even if the petition for guardianship in. Florida had been filed first. The principle of priority can sometimes unreasonably reward the person who wins the race to a courthouse with jurisdiction.
The facts in this case establish that Mr. Morrison had been living in New Jersey since 1999. He jointly owns a home with Ms. Bogert in New Jersey. They were engaged on December 24, 2004, and were planning to wed on Valentine's Day 2006. Two days before the wedding in Nevada, he suffered an injury that left him incapacitated. Ms. Bogert transported. Mr. Morrison back to their home in New Jersey and began to care for him without any established legal guardianship.
Mr. Morrison's adult children removed him from his home in New Jersey without court order and without the knowledge or consent of Ms. Bogert. It is clear that this occurred when he was already legally incompetent. It is worth emphasizing that nothing in our record suggests that his children took him for any improper reason. Likewise, nothing in our record suggests that Ms. Bogert was providing anything other than excellent care for Mr. Morrison.
New Jersey has a strong policy that favors New Jersey guardianship for any person who becomes incapacitated while domiciled in New Jersey. See generally Matter of Jacobs, 315 N.J.Super. 189, 717 A.2d 432 (1998); In re Glasser, 2006 WL 510096 (N.J.Super.Ct. Mar. 3, 2006) (unpublished opinion). The guardianship court in New Jersey has entered reasonable orders that do not disrupt Mr. Morrison's current care here in Florida. At least preliminarily, it has allowed Mr. Morrison's daughter, Cynthia, to manage his assets. When last competent, Mr. Morrison chose to live in New Jersey. Given that state's interests in this case and given the method by which Mr. Morrison's person became subject to the jurisdiction of Florida courts after he was no longer competent, I believe that comity should be extended to New Jersey without regard to filing dates on the petitions for guardianship.
Guardianships are very different from situations involving competing civil lawsuits. Mr. Morrison has an immediate need for one, and only one, guardian of his person who is authorized to make medical decisions for him. He apparently owns extensive property and it may be important to have a guardian of his property that can exercise judgment independent of all of his loved ones. In a state like Florida that has a large population of older people who are actually domiciled in other *912 states, it would seem prudent to me to encourage trial courts to defer to the state of a ward's domicile even when petitions for guardianship are first filed in Florida.
NOTES
[1] Bogert raised other issues in support of her request for a stay. However, we do not discuss those issues herein because our decision on the principle of priority renders them moot.
[2] Bogert cites to Schwartz v. DeLoach, 453 So.2d 454, 454-55, 456 (Fla. 2d DCA 1984); Sauder v. Rayman, 800 So.2d 355, 358 (Fla. 4th DCA 2001); Hirsch v. DiGaetano, 732 So.2d 1177, 1177 (Fla. 5th DCA 1999); Fla. Crushed Stone v. Travelers Indem. Co., 632 So.2d 217, 220 (Fla. 5th DCA 1994); Polaris Pub. Income Funds v. Einhorn, 625 So.2d 128, 129 (Fla. 3d DCA 1993).