632 So.2d 217 (1994)
FLORIDA CRUSHED STONE COMPANY, Appellant,
v.
The TRAVELERS INDEMNITY COMPANY, Appellee.
No. 92-3044.
District Court of Appeal of Florida, Fifth District.
February 18, 1994.
Kevin C. Knowlton, J. Davis Connor, and Stephen R. Senn of Peterson, Myers, Craig, Crews, Brandon & Puterbaugh, P.A., Lakeland, for appellant.
Roy W. Cohn of Chorpenning, Good, Gibbons & Cohn, P.A., Tampa, for appellee.
GRIFFIN, Judge.
Appellant, Florida Crushed Stone Company ("FCS"), purchased retrospective workers' compensation insurance and retrospective business, automobile and general liability insurance under three annual policies for the period beginning May 1, 1985 and ending on May 1, 1988. The policies were variously issued by Appellee, Travelers Indemnity, The Travelers Insurance Company ("Travelers Insurance") and The Travelers Indemnity Company of Illinois ("Travelers Illinois"). These will be collectively referred to as "Travelers."
*218 Under the insurance contracts, FCS was required to pay current and retrospective premiums calculated pursuant to a complex formula that included calculation of "incurred losses," "reserves for unpaid losses," "claims handling factor" adjustments and "tax multipliers."
Under the contracts, beginning November 1, 1986 and annually thereafter, Travelers was entitled to calculate an "adjusted retrospective premium" using audited basic premium charges and FCS's actual losses. The "adjusted retrospective premium" was then compared to the sums already paid under the policies as an estimated "retrospective premium." If the total figure for the accounting period was less than the estimated premiums already paid, FCS was entitled to a refund. However, if the estimated premium proved insufficient to cover actual premiums, FCS was obligated to pay the difference. Travelers was entitled to make these adjustments on a yearly basis as long as there were any ongoing losses or payments still being sustained under the policies.
FCS paid $1,090,643 in estimated retrospective premiums under the 1985 policy,[1] $1,095,871 in estimated retrospective premiums under the 1986 policy,[2] and $1,005,078 in estimated retrospective premiums under the 1987 policy.[3] Thereafter, in November 1990, Travelers made a "retrospective premium adjustment" for the period from May 1, 1985 to May 1, 1988. Travelers' calculations allegedly showed that FCS owed $592,345 in retrospectively adjusted premiums as of November 1990.
Thereafter, as an "accommodation" to FCS, Travelers agreed to accept reduced monthly installment payments on the retrospectively adjusted premiums due as of November, 1990, together with interest at the rate of ten percent, for a period of twelve months beginning July 15, 1991.[4] The remaining balance was to be paid on July 15, 1992 in a balloon payment of $313,498.44, which included interest of $2,590.90. Principal and interest under the agreement totalled $641,503. The extended payments schedule was memorialized in a "promissory note" executed by FCS in favor of Travelers on July 15, 1991. The note provided in part as follows:
This Promissory Note has been entered into as an accommodation to FCS in connection with the payment of the retrospective adjustment premium for the policy period 5/1/85  5/1/88, valuation date November 1, 1990. The Travelers Indemnity Company makes this accommodation without prejudice to or waiver of any rights or remedies, including but not limited to any remedies stated in any agreement or agreement letter between the parties. In consideration of this accommodation, FCS acknowledges the retrospective adjustment premium indebtedness which is the subject of this Promissory Note, and FCS waives all defenses concerning the calculation, amount and payment thereof. Any indebtedness which develops as a result of any future retrospective premium adjustment, audit or paid losses will be due and payable when presented and are not subject to the terms of this Promissory Note. (emphasis added).
After making ten monthly payments under the promissory note, FCS failed to make the payment due on April 15, 1992. By this time, Travelers had made yet another retrospective premium adjustment which showed that FCS owed an additional $643,324 in retrospective premiums as of November 1991. Two weeks after the default under the promissory note, on April 30, 1992, FCS brought an action against Travelers Insurance in federal district court, suing on theories of negligence, breach of contract and seeking a declaratory judgment.
*219 The claim for breach of contract was based essentially on allegations that FCS had previously paid retrospective premiums under the three policies which it was entitled to recover because Travelers had breached its obligation under the policies to:
a) competently and diligently investigate and adjust losses and claims covered by the policies, so as to reasonably minimize losses paid and incurred which would form part of the basis for retrospectively adjusted premiums charged to FCS; and
b) competently and diligently compute and/or establish loss reserves pertaining to claims covered by the policies which form part of the basis for retrospectively adjusted premiums charged to FCS.
The contract claim concerned only those damages to FCS which had "accrued on or after May 1, 1988," which apparently refers to retrospective premium payments made after that date. The claim for declaratory judgment sought a determination whether Travelers had breached its obligations under the policies and, if so, whether FCS "currently owe[d] Travelers Insurance $643,324 in retrospective premiums" (the amount allegedly due under the 1991 adjustment) and whether it was obligated "to pay future retrospectively adjusted premiums to Travelers" under its contracts. FCS later filed an amended complaint in this action on or about October 6, 1992. The amended complaint was virtually identical to the initial complaint, but it added Travelers Indemnity and Travelers Illinois as additional defendants to the action. Neither the complaint nor the amended complaint specifically appears to seek relief concerning the promissory note.
Shortly after FCS filed the initial federal action, Travelers Indemnity brought its own action in federal district court against FCS for breach of contract.[5] In that action, Travelers sought to recover the $643,324 in retrospective premiums allegedly owed by FCS for the 1991 retrospective adjustment. FCS answered this complaint on July 30, 1992. The only affirmative defense it asserted was that Travelers had breached the insurance contracts by its failure to competently and diligently adjust losses. FCS also brought a two count counterclaim in that action in which it sought the same declaratory relief and damages for breach of contract it had sought in the earlier action.
Travelers Indemnity then filed the instant action in state court against FCS on June 11, 1992 to recover the balance due under the promissory note for the 1990 retrospective adjustment. This action demanded judgment in the principal amount of $359,781.47, plus interest.
Instead of filing an answer below, on July 7, 1992 FCS moved to stay the action, contending that a stay was appropriate because the federal court actions had been filed first and involved the same issues. Travelers Indemnity opposed the stay, contending that the two actions involved different parties and different causes of action. Specifically, Travelers noted that it was not a party to the initial federal action; rather, that action had been brought against Travelers Insurance. Travelers Indemnity further noted that the federal actions contained no claims involving the promissory note, which formed the basis of the state court action. Finally, Travelers contended that the federal actions involved the 1991 retrospective adjustment, while the state action involved only the 1990 retrospective adjustment.
At approximately the same time that Travelers Indemnity responded to FCS's motion to stay, Travelers moved for summary judgment in state court based on FCS's failure to make payments under the promissory note. The only documents filed by Travelers in support of the motion were a copy of the note and the affidavit of Jeffrey W. Rice, which established the nonpayment of monies due under the note.
FCS opposed the motion for summary judgment by filing, in addition to the two federal complaints, a copy of its First Amended Complaint in the initial federal action. It also filed the affidavit of Rosario Ciccarello, an independent insurance consultant *220 for FCS who asserted "Travelers Insurance Companies" had breached several express or implied contractual duties and certain statutory obligations.
The trial court heard the motion for summary judgment and the motion to stay the state court proceedings in a joint hearing. At the hearing, Travelers Indemnity contended that a stay was improper because none of the federal actions concerned the 1990 retrospective adjustment or the promissory note.
On November 9, 1992, the court granted Traveler Indemnity's motion for summary judgment in a non-speaking order. FCS has appealed, contending that the trial court erred by entering summary judgment for Travelers Indemnity and refusing to stay the state court proceedings. We reverse.
Although a trial court has broad discretion to order or refuse a stay of an action pending before it, it is nonetheless an abuse of discretion to refuse to stay a subsequently filed state court action in favor of a previously filed federal action which involves the same parties and the same or substantially similar issues. State v. Harbour Island, Inc., 601 So.2d 1334 (Fla. 2d DCA 1992); Ricigliano v. Peat, Marwick, Main & Co., 585 So.2d 387 (Fla. 4th DCA 1991); Koehlke Components, Inc. v. South East Connectors, Inc., 456 So.2d 554 (Fla. 3d DCA 1984); Schwartz v. DeLoach, 453 So.2d 454 (Fla. 2d DCA 1984).[6] This rule is based on principles of comity. Polaris Public Income Funds v. Einhorn, 625 So.2d 128, 129 (Fla. 3d DCA 1993); Robinson v. Royal Bank of Canada, 462 So.2d 101 (Fla. 4th DCA 1985).
The need for the state and federal actions to involve the same parties appears to be satisfied in this case. Although "Travelers Insurance Companies" was initially the named party in the federal proceeding, Travelers Indemnity was specifically named in the amended complaint. The initial identification of the defendant was plainly a misnomer.
More problematical is the question whether there was a sufficient identity of issues between either the amended federal action or the second federal action and the later-filed state court action to warrant a stay of the state proceeding. The causes of action do not have to be identical; it is sufficient that the two actions involve a single set of facts and that resolution of the one case will resolve many of the issues involved in the subsequently filed case. National American Ins. Co. v. Charlotte County, 611 So.2d 1284 (Fla. 2d DCA 1992) (trial court erred by refusing to grant stay of state court action by surety for breach of surety bond in view of prior pending federal action for declaratory judgment concerning substantially same issues); Harbour Island, 601 So.2d at 1334 (trial court abused its discretion by refusal to stay state court action pending determination of prior federal action which did not involve identical claims but where disposition of federal case would resolve many issues raised in state action); Koehlke Components, 456 So.2d at 554 (trial court abused its discretion by refusal to stay later filed state court action for declaratory judgment when earlier action asserting rights under contract involved in declaratory judgment action had been filed in federal court).
Travelers Indemnity apparently theorizes that neither of the federal actions closely enough resembles this action to require a stay because this action is based on the promissory note, which concerned unpaid retrospective premiums due as of November, 1990. FCS contends that the action on the note is "subsumed" within its action (and/or counterclaim) for breach of contract and declaratory judgment, even though the 1990 retrospective premiums left unpaid under the note does not appear to be directly addressed in either federal action. In its federal action (or counterclaim) for breach of contract, *221 FCS sought to recover those adjusted retrospective premiums which had already been paid as of the filing of the complaint (e.g. the adjusted retrospective premiums paid in 1989, plus the ten months of payments made for the 1990 adjustment). The claim for declaratory judgment sought a resolution concerning whether FCS "currently owe[d] Travelers Insurance $643,324 in retrospective premiums," which was the amount allegedly due under the 1991 adjustment, as well as a declaration concerning whether FCS was obligated "to pay future retrospectively adjusted premiums to Travelers" under its contracts. As far as we can determine, none of these claims addressed the unpaid balance allegedly due under the promissory note for the 1990 adjustment.
Nonetheless, we conclude a stay of the state court proceeding was warranted since resolution of the federal action will resolve many of the issues involved in this action. The entire thrust of FCS's federal action is its contention that Travelers retroactive premium assessments are invalid. Moreover, the note will necessarily be an affirmative defense to FCS's attempt in the federal action to recover the payments already made by FCS for the 1990 adjustment based on Travelers' alleged breaches. All of the disputes between these parties plainly stem from the basic question of whether Travelers is guilty of any breach of conduct or other legal duty, and, if so, how much FCS is entitled to recover or be excused from paying. This should be determined in a single forum. The federal actions were filed first and the state court should give way. It was therefore error to refuse to grant the stay and to grant summary judgment.
REVERSED and REMANDED.
DIAMANTIS, J., concurs.
HARRIS, C.J., dissents, without opinion.
NOTES
[1] FCS' total estimated premium under the 1985 policy was $1,451,720, but this included $361,077 in non-retrospective premiums.
[2] FCS' total estimated premium under the 1986 policy was $1,626,009, but this included $530,138 in non-retrospective premiums.
[3] FCS' total estimated premium under the 1987 policy was $1,424,412, but this included $419,334 in non-retrospective premiums.
[4] The first four monthly installments were $37,216.77. Thereafter, the payments were reduced to $27,333.72 for a period of eight months.
[5] This suit (Case No. 92-778-Civ-T-15C) was filed on June 9, 1992, nine days after the filing of the original complaint.
[6] See also Towers Constr. Co. of Panama City, Inc. v. Key West Polo Club Apartments, Ltd., 569 So.2d 830 (Fla. 5th DCA 1990) (where suit pending in different circuit involving same parties and substantially same issue, venue should be transferred to county in which action was first filed); Lightsey v. Williams, 526 So.2d 764 (Fla. 5th DCA 1988) (failure to stay action subsequently filed in another circuit involving same parties and substantially same issues was abuse of discretion); Robinson v. Royal Bank of Canada, 462 So.2d 101 (Fla. 4th DCA 1985) (recognizing rule and requiring stay of later filed Florida action in favor of previously filed Canadian action).