DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**INPHYNET CONTRACTING SERVICES, INC.**, d/b/a Emergency Physicians of Delray, a Florida corporation; **MD NOW MEDICAL CENTERS, INC.**, a Florida corporation; **SELECT PHYSICAL THERAPY HOLDINGS, INC.**, d/b/a Select Physical Therapy, a foreign corporation authorized to do business in Florida; **PREMIER FAMILY HEALTH, P.A.**, a Florida Professional Association; **WELLINGTON MEDICAL CARE ASSOCIATES, LLC**, a Florida limited liability company; **HEALTHPORT TECHNOLOGIES, LLC**; and all other persons and entities similarly situated,
Appellants,

v.

**R.V. MATTHEWS III, PATRICIA MAHER, RON DEPAOLO**, and **LAUREN MCKELVEY**, as Personal Representative of the Estate of Scott M. McKelvey, individually and on behalf of all persons similarly situated,
Appellees.

Nos. 4D14-3382, 4D14-3387, 4D14-3391 and 4D14-3392

[June 22, 2016]

Consolidated appeals of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Lucy Chernow Brown, Judge; L.T. Case No. 50-2013-CA-009428-MB (AH).

Beverly A. Pohl, Barbara Viota-Sawisch, Vanessa M. Serrano, and Peter R. Goldman of Broad and Cassel, Fort Lauderdale, for appellant Inphynet Contracting Services, Inc.

Michael Fox Orr and Amanda E. Ferrelle of Dawson | Orr, P.A., Jacksonville, for appellant Premier Family Health, P.A.

Charles M. Auslander, John G. Crabtree and George R. Baise Jr. of Crabtree & Auslander, Key Biscayne, for appellant Wellington Medical Care Associates, LLC.

Roberto M. Vargas of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellant/intervenor HealthPort Technologies, LLC.

William J. Cornwell, Seth A. Kolton, Sylvia L. Wenger and Howard I. Weiss of Weiss Handler & Cornwell, P.A., and Bruce F. Silver of Silver & Silver, P.A., Boca Raton, for appellees.

CONNER, J.

This is a consolidated appeal of a trial court order granting bilateral class certification, certifying both a plaintiff and a defendant class, in an action challenging fees charged for copies of health care records. This portion of the order is appealable as a non-final order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi). For the reasons set forth below, we reverse the order insofar as it certified a defendant class and a defendant subclass. We affirm, without discussion, the order certifying a plaintiff class. The other aspect of the order which denied stay is reviewable by certiorari, as discussed below. We grant certiorari relief and quash the order denying stay of the entire action pending resolution of two other prior-filed class actions currently pending in the Circuit Court of Hillsborough County. Additionally, we quash that portion of the trial court order that applied a limited stay to the plaintiff subclass, and reverse the imposition of that subclass.

*Factual Background and Trial Court Proceedings*

The four named plaintiffs in this case are existing or past patients of health care providers who received treatment and requested copies of their medical records, bills generated from such treatment, or both, through attorneys as their legal representatives. The plaintiffs filed a class action asserting claims that charges assessed to their legal representatives for these records exceeded the limits of section 456.057, Florida Statutes (2013), and the administrative regulations governing the various providers. The plaintiffs contend that their legal representatives paid the excessive charges and passed the charges on to them. Additionally, the plaintiffs allege the excessive charges violate the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). The amended complaint ("the Complaint") asserts a bilateral class action, asking the trial court to certify both a plaintiff class, consisting of:

> For the period from June 1, 2009 through the date of entry of judgment herein (the "Class Period"), any person or any person's legal representative who, in violation of Florida law, was charged an excessive amount to obtain copies of health care records from *any Florida Record Owner,*

(emphasis added) and a defendant class, consisting of:

> *All Record Owners located in the State of Florida* who, during the Class Period, violated Florida law by charging any person or any person's legal representative an excessive amount to obtain copies of requested health care records.

(emphasis added). The Complaint seeks declaratory relief, damages, supplemental relief, and attorney's fees.

The Complaint specifically cites statutory and rule authority for the alleged violations of law. First, the Complaint references section 456.057(6), Florida Statutes (2013), which provides:

> Any health care practitioner[1] licensed by the department or a board within the department who makes a physical or mental examination of, or administers treatment or dispenses legend drugs to, any person shall, upon request of such person or the person's legal representative, furnish, in a timely manner, without delays for legal review, copies of all reports and records relating to such examination or treatment, including X rays and insurance information.

*Id.* Next, the Complaint references section 456.057(17), Florida Statutes (2013), which provides:

> A health care practitioner or records owner furnishing copies of reports or records or making the reports or records available for digital scanning pursuant to this section shall charge no more than the actual cost of copying, including reasonable staff time, or the amount specified in administrative rule by the appropriate board, or the department when there is no board.

*Id.* Finally, the Complaint references four administrative rules governing fees for medical records: Florida Administrative Code Section 64B8-10.003 (applicable to medical doctors); Section 64B15-15.003 (applicable to osteopaths); Section 64B2-17.0055 (applicable to chiropractors); and Section 64B17-6.005 (applicable to physical therapists). All four administrative codes provide that the reasonable cost of reproducing copies of written or typed documents shall be no more than $1.00 per page for the first twenty-five pages, and no more than $0.25 for each additional page in excess of twenty-five pages. Fla. Admin. Code R. 64B8-10.003(2), 64B15-15.003(2), 64B2-17.0055(2), 64B17-6.005(2).

The Complaint alleges that the defendants, Premier Family Health, P.A. ("Premier"), Wellington Medical Care Associates, LLC ("Wellington"), and InPhyNet Contracting Services, Inc. ("Inphynet"), are either corporate entities or professional associations providing health care services. In the trial court and on appeal, Inphynet contends that it is not a health care provider, a medical

---

[1] The term "health care practitioner" or "record owner" excludes certain professionals such as certified nursing assistants, pharmacists, dental hygienists, respiratory therapists and others specified in section 456.057(2), Florida Statutes (2013). However, terms include health care professionals who are not covered by the four administrative rules alleged in the Complaint. Thus, by defining the classes with reference to "all record owners," both the purported plaintiff and defendant classes contained members for whom none of the four administrative rules are applicable.

record owner, or a record custodian. Because we reverse the defendant class certification for other reasons, we do not address this argument.

With respect to Premier, the plaintiffs alleged that Premier violated the statutes and administrative rule by contracting services through another entity, BACTES Imaging Solutions, Inc. BACTES is considered a "ROI" (Release of Information) provider of medical records.[2] Significant to the proceedings below and to this appeal is the fact that BACTES is named as a defendant in a prior-filed class action suit that was pending at all times material to this case in the Circuit Court of Hillsborough County ("the *Webber* Case").

Another ROI provider, HealthPort Technologies, LLC ("HealthPort"), was involved in providing medical records to one of the named plaintiffs and successfully moved to intervene in this case. Although not granted full party status, HealthPort was able to participate in the proceedings below, and has appeared in this appeal. Like BACTES, HealthPort asserts an interest in this case because it is a named defendant in another prior-filed class action proceeding, also pending in the Circuit Court of Hillsborough County ("the *Allen* Case"). All three defendants in this case, as well as HealthPort, contend that the *Webber* Case and the *Allen* Case assert the same claims and legal theories the plaintiffs are pursuing in this case. The named plaintiffs in this case contend that the class actions filed in the *Webber* Case and the *Allen* Case are not similar to this case because, in both of those cases, a ROI is a defendant, whereas in this case, no ROI has been directly sued and the defendant class is composed of medical record owners.

The trial court found that the plaintiffs adequately demonstrated the requirements of Florida Rule of Civil Procedure 1.220(a) and (b) to justify bilateral class certification. As to the defendant class, the trial court found that each named defendant and the defendant class are subject to the limitations on copying costs imposed by either a statute or the respective regulatory boards under which the medical record owner was licensed, and that a class representative could fairly and adequately protect the interests of the defendant class. The trial court determined that "[t]here are no substantial or fundamental conflicts between the Defendants that go to the specific issue in controversy in this litigation." It also found that "multiple lawsuits would create a substantial risk of inconsistent rulings which would impose incompatible standards of conduct on Defendants." To address the possibility that there may be some overlap between the named and class defendants in this case and the defendants or defendant classes in the *Webber* Case and the *Allen* Case, the trial court created a plaintiff and defendant subclass to include the class parties in this

---

[2] ROIs service medical records for record owners to assure compliance with state and federal privacy laws.

case who may have their claims resolved by either of those cases. The trial court entered a stay as to the proceedings involving the subclasses.

The three defendants and HealthPort gave notice of appeal of the order certifying bilateral classes in this case.

*Appellate Analysis*

<u>Certification of Defendant Class</u>

*Class Certification*

Orders granting or denying class certification are reviewed for an abuse of discretion. *Freedom Life Ins. Co. of Am. v. Wallant*, 891 So. 2d 1109, 1113-14 (Fla. 4th DCA 2004) (citing *Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436, 438 (Fla. 4th DCA 1999)). "A trial court's decision as to whether a party has satisfied the standing requirement is reviewed de novo." *Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 116 (Fla. 2011). "Because Florida's class action rule is based on Federal Rule of Civil Procedure 23, Florida courts may generally look to federal cases as persuasive authority in their interpretation of rule 1.220." *InPhyNet Contracting Servs., Inc. v. Soria*, 33 So. 3d 766, 770-71 (Fla. 4th DCA 2010) (citing *Seven Hills, Inc. v. Bentley,* 848 So. 2d 345, 352-53 (Fla. 1st DCA 2003)).

"The movant for class certification bears the burden of establishing all the requirements of Florida Rule of Civil Procedure 1.220." *Id.* at 771 (citing *Chase Manhattan Mortg. Corp. v. Porcher*, 898 So. 2d 153, 156 (Fla. 4th DCA 2005)). "The trial court must conduct a 'rigorous analysis' to determine whether class certification is warranted." *Id.*; *Execu-Tech Bus. Sys., Inc. v. Appleton Papers, Inc.*, 743 So. 2d 19, 21-22 (Fla. 4th DCA 1999). Compliance with rule 1.220 requires a rigorous analysis "because the granting of class certification considerably expands the dimensions of the lawsuit, and commits the court and the parties to much additional labor over and above that entailed in an ordinary private lawsuit." *Baptist Hosp. of Miami, Inc. v. Demario*, 661 So. 2d 319, 321 (Fla. 3d DCA 1995).

A movant for class certification must demonstrate the following four prerequisites required by rule 1.220(a):

> (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.

5

*Soria*, 33 So. 3d at 771; *see also* Fla. R. Civ. P. 1.220(a).  Courts refer to these elements as "the numerosity, commonality, typicality, and adequacy of representation elements of class certification." *Soria*, 33 So. 3d at 771 (internal quotation mark omitted) (quoting *Marco Island Civic Ass'n v. Mazzini*, 805 So. 2d 928, 930 (Fla. 2d DCA 2001)).  In addition to satisfying rule 1.220(a), the movant must also satisfy one of the three subdivisions of rule 1.220(b).  Fla. R. Civ. P. 1.220(b); *Sosa*, 73 So. 3d at 106.

The trial court granted class certification pursuant to subsections (b)(1) and (b)(2); thus subsection (b)(3) of the rule is not at issue in this case.  Rule 1.220(b) provides in part:

> **(b) Claims and Defenses Maintainable.**  A claim or defense may be maintained on behalf of a class if the court concludes that the prerequisites of subdivision (a) are satisfied, and that:
>
> (1) the prosecution of separate claims or defenses by or against individual members of the class would create a risk of either:
>
>> (A) inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate[.]

*Defendant Class Certification*

As a general proposition, a motion to certify a *defendant* class raises heightened due process concerns, as compared to a motion to certify a *plaintiff* class.  *See City of Tampa v. Addison*, 979 So. 2d 246, 254 (Fla. 2d DCA 2007).  As the federal district court in *Marchwinski v. Oliver Tyrone Corp.*, 81 F.R.D. 487 (W.D. Pa. 1979), observed:

> [A] defendant class differs in vital respects from a plaintiff class, and . . . the very notion of a defendant class raises immediate due process concerns.  When one is an unnamed member of a plaintiff

6

class one generally stands to gain from the litigation. The most one can lose in cases where res judicata operates is the right to later bring the same cause of action. However, when one is an unnamed member of a defendant class, one may be required to pay a judgment without having had the opportunity to personally defend the suit. Although we believe that the Rule 23 [the federal rule pertaining to class actions] requirements of adequacy of representation and notice to class members were designed to safeguard due process rights, we note the inherent difference in the nature of plaintiffs and defendants in most suits and suggest that a defendant class should be certified and such an action tried only after careful attention to these safeguards.

*Id.* at 489.

Because the trial court's certification of the defendant class in this case creates a mandatory class without an "opt out" provision, due process rights of the putative defendants are at greater risk. To the extent the plaintiffs are seeking monetary damages, courts have recognized the risk of diverging interests among the putative defendants. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804-05 (1985). Although the named plaintiffs assert with emphasis that the primary objective of the class action litigation is to obtain declaratory and injunctive relief, a proper analysis as to the propriety of certifying a defendant class action nonetheless requires a rigorous assessment due to the risk of diverging interests among the putative defendants. The declaratory judgment will establish entitlement to an award of damages and attorney's fees.

The due process concerns regarding defendant class certification are even more pronounced in *bilateral* class actions. Bilateral class actions raise unique and overlapping issues of standing, commonality, typicality, and adequacy of representation. The overlap of issues regarding bilateral class actions makes appellate analysis sometimes difficult because different appellate opinions focus on different aspects of the problem.[3] For example, the Eleventh Circuit Court of Appeals has observed that "[i]n many ways, the commonality and typicality requirements of [class certification] overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). Another example of the overlap of issues is demonstrated in *Sosa,*

---

[3] The lack of a cohesive approach in analysis is undoubtedly due to different approaches taken by advocates in opposing class treatment. For example, the four appellants in this case argued different issues in different ways when asserting trial court error. Although there are many issues we could have addressed in this opinion, we have focused on those which we have considered primary to a proper resolution of the case.

where our supreme court stated that the issues of typicality and adequacy of representation require an analysis of whether the claims and interests of a class representative and class members are antagonistic. *Sosa*, 73 So. 3d at 114-15 (explaining that typicality is satisfied "when the claims of the class representative and class members are not antagonistic to one another" and "[t]he second prong [of the adequacy requirement] pertains to whether the class representative's interests are antagonistic to the interests of the class members"). Finally, as discussed more fully below, there is arguably some overlap between issues of standing and typicality. As asserted by the Eleventh Circuit, "[w]ithout individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class." *Prado-Steiman*, 221 F.3d at 1279. Thus, the Eleventh Circuit has opined that "[a]ny analysis of class certification must begin with the issue of standing."[4] *Id.* at 1280 (internal quotation marks omitted) (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)). The difficulty presented by the overlap of issues is perhaps best illustrated by the doctrine of "juridical link" discussed below.

The issues and problems unique to defendant class certification have led courts to conclude that certification of defendant classes are, and should be, sparingly granted. The federal district court in *Thillens, Inc. v. Community Currency Exchange Ass'n. of Illinois, Inc.*, 97 F.R.D. 668, 674-76 (N.D. Ill. 1983), asserted that defendant classes seldom are certified. In discussing *In re Gap Stores Securities Litigation*, 79 F.R.D. 283 (N.D. Cal. 1978), as a case which explores the due process issues surrounding defendant class certification in bilateral actions, the Illinois Federal District Court said:

> The *In re Gap* opinion also provides a thoughtful framework for understanding why certification of defendant classes often is denied. There is great judicial reluctance to certify a defendant class when the action is brought by a plaintiff class. The primary concern with bilateral actions, antitrust or other types, is a fear that each plaintiff member has not been injured by each defendant member. . . .
>
> Several rules, useful in unilateral as well as bilateral defendant class actions, emerge from *In re Gap* and similar cases: (1) A defendant class will not be certified unless each named plaintiff has a colorable claim against each defendant class member; (2) A defendant class will not be certified under Fed. R. Civ. P. 23(b)(3) without a clear showing that common questions do in fact predominate over individual issues; (3) The requirement that each named plaintiff must have a claim against each defendant may be

---

[4] Likewise, our supreme court considers standing to be a threshold issue to be considered before class certification. *Sosa*, 73 So. 3d at 116.

waived where the defendant members are related by a conspiracy or "juridical link."

A "juridical link" is some legal relationship which relates all defendants in a way such that single resolution of the dispute is preferred to a multiplicity of similar actions. Absent such juridical link, a defendant class fails the Article III test requiring a case or controversy to support the assertion of jurisdiction.

*Thillens, Inc.*, 97 F.R.D. at 676 (internal citations and footnote omitted).

*Standing and Juridical Link*

The trial court in this case properly addressed the issue of standing before analyzing the other requirements for defendant class certification. The trial court was satisfied that a proper showing of standing was made based on a juridical link between the plaintiff class representatives, the plaintiff class, and all of the members of the defendant class. Regarding standing, the order on appeal states:

> While typically a class representative must be able to maintain a cause of action against each and every named defendant, courts have recognized certain exceptions, such as where defendants are "juridically" related so that a single resolution of the particular dispute would be expeditious. A plaintiff class has standing to pursue its claims against multiple defendants if the actions forming the basis for the lawsuit provide the requisite "juridical link" that authorizes defendants' inclusion in the law suit. *See, e.g., Moore v. Comfed Savings Bank*, 908 F.2d 834, 838 (11th Cir. 1990). Recognizing case law holding that where there was either a contractual obligation among all defendants or a **state or local statute** requiring common action by the defendants, it is appropriate to join as a defendant a party with whom the named class representative, did not have a direct contract. *See, City of Tampa v. Addison*, 979 So. 2d 246, 253 (Fla. 2d DCA 2007).

While it is true that the juridical link exception has been applied by one of our colleague district courts to the issue of standing in certifying a defendant class in a bilateral class action, *see Addison*, 979 So. 2d at 253, the exception is limited, and we are not inclined to interpret the exception broadly enough to apply it in this case.[5]

---

[5] Another example of the difficulty of analysis regarding defendant class certification due to the overlap of issues is demonstrated by case law which contends that the juridical link exception has nothing to do with standing; instead, the exception applies

Although it has evolved over time, the juridical link exception first found expression in *LaMar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973). The *LaMar* opinion was issued after the 1966 amendment to the federal rules of procedure which allowed for an expanded use of class actions. *Id.* at 465. The Ninth Circuit at that time was concerned that class actions could become rampant. *Id.* In an attempt to limit a flood of class action cases, the *LaMar* court held that a plaintiff class representative "cannot represent those having causes of action against other defendants against whom the plaintiff [class representative] has no cause of action and from whose hands he suffered no injury." *Id.* at 462. However, the court went on to say:

> Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury. *Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.*

*Id.* at 466 (emphasis added and footnotes omitted).

Initially, the juridical link exception was applied to government defendants. *Leer v. Washington Educ. Ass'n.*, 172 F.R.D. 439, 448 (W.D. Wash. 1997) ("*La Mar* only briefly discussed what types of relationships might qualify as 'juridical links,' and cited a few prior cases where a juridical link was present. Such cases generally involved class actions brought against state officials applying a common rule."). Eventually, the exception was extended to private actors as defendants who were connected by a common agreement or uniform practice. *Id.* As the *Thillens* court noted, defendant class "certification most commonly occurs (1) in patent infringement cases, (2) in suits against local public officials challenging the validity of state laws, or (3) in securities litigation." *Thillens*, 97 F.R.D. at 674 (citations omitted). Courts have been reluctant to expand the exception to private sector cases, unless the common agreement or uniform practice truly standardizes the questions involved. *See Angel Music, Inc. v. ABC Sports, Inc.*, 112 F.R.D. 70, 75 (S.D.N.Y. 1986) (explaining that the "juridical link" exception is limited to cases where the defendants' conduct "is standardized by a common link to an agreement, contract or enforced system which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class"); *Leer*, 172 F.R.D. at 449 (discussing private sector cases but finding no juridical link where defendant class members had delegated authority to class representative to mail uniform notices); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 223 n.21 (D.N.J. 2003) (holding that defendant class of franchisees did not satisfy juridical link doctrine because

---

to issues of typicality and adequacy of representation. *Matte v. Sunshine Mobile Homes, Inc.*, 270 F. Supp. 2d 805, 822 (W.D. La. 2003).

there was no "common link to an agreement, contract or enforced system which acts to standardize the factual underpinnings of the claims and to insure the assertion of defenses common to the class" (citation omitted)).

Regarding standing for certification of a *plaintiff* class, Florida law is clear. "To satisfy the standing requirement for a class action claim, the class representative must illustrate that a case or controversy exists between him or her and *the defendant,* and that this case or controversy will continue throughout the existence of the litigation." *Sosa,* 73 So. 3d at 116 (emphasis added). However, no Florida court has addressed the issue of standing with regards to certifying a *defendant* class, except for the Second District in *Addison.* 979 So. 2d at 253. In other words, no Florida case has squarely addressed the standing requirement where a plaintiff class representative was not injured by a significant portion of the defendant class. Although the Second District seemingly discusses the juridical link exception to the standing issue in *Addison,* the discussion of the issue of standing is intertwined with the issue of adequacy of representation. *Id.* ("Generally speaking, issues relating to standing and adequacy of representation arise where, as in this case, the plaintiffs seek to certify a bilateral class action, but the defendant class includes parties against whom the nominal plaintiffs have no claim.").

As a matter of standing, we agree with those federal courts which have determined that a class of defendants alleged to be violating a law do not display juridical links merely because its members are subject to a common regulatory scheme. *See Matte,* 270 F. Supp. 2d at 827–28 (holding that "regulation under a common statute, or similar actions in violation of statutory or regulatory provisions," does not establish a juridical link); *Monaco v. Stone,* 2002 WL 32984617, *45 (E.D.N.Y. 2002) (finding juridical link doctrine inapplicable where defendant hospital director class members were not alleged to be following a statute or uniform policy but rather alleged to be making autonomous decisions in violation of state law); *Turpeau v. Fidelity Fin. Servs., Inc.,* 936 F. Supp. 975, 978–79 (N.D. Ga. 1996) (finding no juridical link among defendant lenders and life insurance companies although each allegedly violated same state statute in same manner; defendants were not state officials charged with enforcing state statute or common rule or practice).

In applying the juridical link doctrine to establish the standing of the plaintiff class to maintain an action against the defendant class, the trial court in this case relied upon the only Florida state case granting defense class certification in a bilateral class action, *Addison.* However, reliance on *Addison* is not persuasive because it involved certifying a defendant class consisting of *governmental entities* which had enacted various occupational license tax ordinances under the authority of the same enabling legislation. Thus, *Addison* involved the application of the juridical exception in the context of the original discussion of the exception in *LaMar.* Moreover, there is nothing in the record before us to support a finding that members of the defendant class are private

11

actors who are connected by a common agreement or uniform practice. Thus, the juridical link was improperly applied in this case to establish standing as to the defendant class.

Having determined that the trial court erred in determining that the plaintiff class had standing to bring a class action against the defendant class, we reverse and remand for further proceedings to decertify the defendant class and the defendant subclass.

*Denial of Stay of Entire Case*

Premier and HealthPort seek review of the trial court order denying the motion to stay, asserting the trial court erred in denying a stay of the entire action because of the pending litigation in both the *Webber* Case and the *Allen* Case. Premier contends the parties and issues are similar enough in all three cases to require a stay of the entire case to avoid unnecessary and duplicitous litigation and possibly inconsistent judgments. In opposition, the plaintiffs contend that the plaintiff classes in the *Webber* Case and the *Allen* Case are substantively different from the plaintiff class in this case because the *Webber* Case and the *Allen* Case involve ROI providers, whereas this case involves the medical record owners.

Although it is not argued in the briefs, we initially observe that the order denying the motion to stay the entire proceeding is a non-final, non-appealable order. Thus, we do not have jurisdiction as to that order on direct appeal. Nonetheless, we treat the appeal as a petition for writ of certiorari. *See* Fla. R. App. P. 9.040(c) (stating that if a party seeks an improper appellate remedy, "the cause shall be treated as if the proper remedy had been sought"); Fla. R. App. P. 9.030(b)(2)(A) ("The certiorari jurisdiction of district courts of appeal may be sought to review . . . non-final orders of lower tribunals other than as prescribed by rule 9.130."); *Marchetti v. School Bd. of Broward Cty.*, 117 So. 3d 811, 812-13 (Fla. 4th DCA 2013).

"For an appellate court to review a nonfinal order by petition for certiorari, the petitioner must demonstrate that the trial court departed from the essential requirements of the law, thereby causing irreparable injury which cannot be adequately remedied on appeal following final judgment." *Belair v. Drew*, 770 So. 2d 1164, 1166 (Fla. 2000). Premier has argued on appeal that the trial court abused its discretion in denying a stay of the entire action, and that the class defendants are significantly exposed to the risk of inconsistent rulings on the same issues by other courts. We agree with Premier that the trial court abused its discretion in denying a stay of the entire action, and determine that the abuse of discretion constitutes a departure from the essential requirements of law. We also determine the denial of a stay of the entire proceeding creates the risk of irreparable harm that cannot be remedied on appeal.

*Irreparable Harm*

As to irreparable harm, we have previously said that exposure to a potential inconsistent ruling on the same issue by another court constitutes irreparable harm. *Cole v. Cole*, 937 So. 2d 261, 262 (Fla. 4th DCA 2006) (determining there would be irreparable harm due to the potential of an inconsistent ruling in a separate proceeding which could affect the ability of the family court to equitably divide marital assets); *REWJB Gas Investments v. Land O'Sun Realty, Ltd.*, 645 So. 2d 1055, 1056 (Fla. 4th DCA 1994) (quashing denial of stay of the entire proceedings regarding the eviction of multiple defendants until a declaratory action filed in another circuit as to the validity of the underlying lease was resolved, after concluding irreparable harm from risk of conflicting decisions).

In this case, the plaintiff class is seeking damages and "any other relief the Court deems proper and just" for violation of FDUTPA, as well as, "supplemental relief that may be appropriate under Section 86.061, Fla. Stat." FDUTPA allows for injunctive relief, and injunctive relief is also appropriate under section 86.061. To the extent that the plaintiff class is seeking declaratory relief which will determine the amount of damages awarded, we are satisfied there is a potential that declaratory relief entered by the trial court in the proceeding below could be inconsistent with declaratory relief entered in the *Allen* Case, currently on appeal in the Second District.[6] Thus, Premier has established the potential for irreparable harm that justifies certiorari review of the order denying a stay of the entire proceeding.

*Departure from the Essential Requirements of Law*

The trial court's limited stay order, denying the request for a blanket stay of the entire action, is reviewed for abuse of discretion. *REWJB Gas Invs.*, 645 So. 2d at 1055. As discussed below, the principle of priority applies to the analysis of whether a stay of the entire proceeding should have been granted by the trial court below. "'Absent extraordinary circumstances . . . a trial court abuses its discretion when it fails to respect the principle of priority.'" *Parker v. Estate of Bealer*, 890 So. 2d 508, 512 (Fla. 4th DCA 2005) (quoting *Hirsch v. DiGaetano*, 732 So. 2d 1177, 1177-78 (Fla. 5th DCA 1999)).

---

[6] We note that on March 2, 2016, the Second District *per curiam* affirmed the trial court decision certifying a plaintiff class in the *Allen* Case; however, a ruling on motions for rehearing, rehearing en banc, clarification and for written opinion remains pending. *HealthPort Technologies, LLC v. Allen*, 2016 WL 802065 (Fla. 2d DCA Mar. 2, 2016). We also note that our review of online records does not indicate that any appeal of the trial court decision certifying a plaintiff class in the *Webber* Case has been filed as of the date this opinion.

We determine that the principle of priority, as a matter of comity, applies to the motion to stay the entire proceeding in this case. In a class action case, the Third District described the principle of priority as follows:

> Principles of comity between sovereigns suggest that a court of one state should stay a proceeding pending before it on grounds that a prior-filed case involving substantially the same subject matter and parties is pending in another state's courts.

*Polaris Pub. Income Funds v. Einhorn*, 625 So. 2d 128, 129 (Fla. 3d DCA 1993) (citation omitted).

The rationale for the application of the principle of priority, as a matter of comity, is the avoidance of wasting judicial resources in duplicative and unnecessary proceedings and the risk of inconsistent judgments regarding the application of law to the same factual dispute. *Robeson v. Melton*, 52 So. 3d 676, 679 (Fla. 4th DCA 2009) (holding that the trial court abused its discretion in not granting a stay where two duplicative proceedings could result in the possibility of inconsistent results); *In re Guardianship of Morrison*, 972 So. 2d 905, 908 (Fla. 2d DCA 2007) ("The purpose of applying the principle of priority as a matter of comity is to prevent 'unnecessary and duplicitous lawsuits' that 'would be oppressive to both parties.'" (quoting *Siegel v. Siegel*, 575 So. 2d 1267, 1272 (Fla. 1991)); *Edgar v. Cape Coral Med. Ctr., Inc.*, 712 So. 2d 1209, 1211 (Fla. 2d DCA 1998) (upholding a stay order where "[i]t would be a waste of judicial resources for both actions, involving the same set of facts and requesting virtually identical relief, to proceed side-by-side"); *REWJB Gas Invs.*, 645 So. 2d at 1056.

In applying the principle of priority, the pivotal question is whether the second-filed action is sufficiently similar in parties and issues as to be unnecessarily duplicative of the prior-filed proceeding. *Pilevsky v. Morgans Hotel Grp. Mgmt., LLC*, 961 So. 2d 1032, 1035 (Fla. 3d DCA 2007). Florida law is clear that "the causes of action do not have to be identical" to require a stay of the second-filed action. *Id.* (quotation marks omitted) (quoting *Florida Crushed Stone Co. v. Travelers Indem. Co.*, 632 So. 2d 217, 220 (Fla. 5th DCA 1994)). "It is sufficient that the two actions involve a single set of facts and that resolution of the one case will resolve many of the issues involved in the subsequently filed case.'" *Id.* (quoting *Travelers*, 632 So. 2d at 220). Nor does the principle of priority require an absolute identity of parties between the two actions, with regards to the propriety of a stay.[7] *Sorena v. Gerald J. Tobin, P.A.*, 47 So. 3d 875,

---

[7] We note that the case law more stringently requires identity of parties with regard to abatement of an action. *See REWJB Gas Invests.*, 645 So. 2d at 1057 (noting that abatement would not have been available where there was not a complete identity of parties); *Sauder v. Rayman*, 800 So. 2d 355, 358 (Fla. 4th DCA 2001) ("While abatement

878 (Fla. 3d DCA 2010) ("Complete identity of the parties and claims is not required [in applying the principle of priority to a motion to stay]." (citing *In re Guardianship of Morrison*, 972 So. 2d at 910)); *see also Ricigliano v. Peat, Marwick, Main & Co.,* 585 So. 2d 387, 387 (Fla. 4th DCA 1991) (holding that it is within a trial court's discretion to grant stay in subsequently filed state action where the allegations in previously filed federal action are the same, notwithstanding a disparity in the parties to the two actions); *REWJB Gas Invests.*, 645 So. 2d at 1056 (reversing the denial of a stay despite the fact there was not a "complete identity of parties," where there was a "common contract interpretation issue" that would be dispositive of both related actions and "it would not be in the interest of judicial economy to have more than one court make the same decision"); *Edgar,* 712 So. 2d at 1211 (affirming a stay of the state action in favor of the previously filed federal action, without requiring a complete identity of parties and noting "many of the issues in the state action would be made moot by a final determination of the federal action").

Although the principle of priority is generally applied to cases pending concurrently in a federal court and a state court or currently in courts of two different states, the principle is also applicable when two cases are pending in different circuits within this state. *See REWJB Gas Invests.*, 645 So. 2d at 1056 (holding it error to deny stay in later-filed Palm Beach County eviction proceeding where a prior declaratory action was filed in Dade County); *Ewing Indus., Inc. v. Miami Wall Sys't, Inc.,* 583 So. 2d 713, 714 (Fla. 3d DCA 1991) (analyzing a case where parties brought similar actions in the Fifth and the Eleventh Judicial Circuits; pendency of the prior action was grounds to abate later-filed action); *Lightsey v. Williams*, 526 So. 2d 764, 765-66 (Fla. 5th DCA 1988) (failure to stay trespass proceedings pending earlier-filed declaratory judgment action in another county which involved the same parties and the same, or substantially the same, causes of action constitutes an abuse of discretion and a departure from the essential requirements of the law).

In the context of class actions, we have said that where federal and state courts have concurrent jurisdiction over the parties and identical causes of action, the latter court to obtain jurisdiction should stay all proceedings in deference to the first court. *Black v. Rouse*, 587 So. 2d 1359, 1363 (Fla. 4th DCA 1991). Likewise, the Third District has stated that when there is a previously-filed class action case which involves substantially similar parties and issues, the subsequently-filed action should be stayed. *See Beckford v. GMC*, 919 So. 2d 612, 613 (Fla. 3d DCA 2006); *J.M. Smucker Co. v. Rudge*, 877 So. 2d 820, 822 (Fla. 3d DCA 2004); *Einhorn*, 625 So. 2d at 129-30.

requires complete identity of parties and causes of action, . . . a stay should require substantial similarity of parties and actions.").

The record in this case does not reveal a valid reason to depart from the principle of priority. Because, as discussed above, the failure to observe the principle of priority is an abuse of discretion, and because the class action suit below exposes the named defendants to the potential of inconsistent rulings by different courts considering the sufficiently similar issues, we hold that the failure to stay the entire proceedings is a departure from the essential requirements of law. A stay of the entire case was warranted, and we quash the trial court's denial of the motion to stay the entire case. If a stay of the entire proceeding had been granted, then there would have been no need to carve out a plaintiff subclass. Thus, we also reverse the portion of the order creating a plaintiff subclass.

Insofar as we have granted certiorari and quashed the trial court's order denying stay of the entire cause, the matter of stay will return to the trial court for further consideration. This Court has no jurisdiction to compel the trial court to institute a complete stay since this issue arose under principles of certiorari. *See Broward Cty. v. G.B.V. Int'l Ltd.*, 787 So. 2d 838, 844 n.18 (Fla. 2001) ("[O]n certiorari an appellate court can only deny the writ or quash the order under review. It has no authority to take any action resulting in the entry of a judgment or orders on the merits or to direct that any particular judgment or order be entered." (alteration in original) (quoting *Snyder v. Douglas*, 647 So.2d 275, 279 (Fla. 2d DCA 1994))). However, on remand, the parties may once more seek a stay pending final resolution of the *Allen* Case, and the trial court may determine whether the issues in the pending appeal remain and are sufficiently similar given the nature of the record providers in this cause and that pending in the *Allen* case.[8]

*Affirmed in part, reversed in part, certiorari granted in part, and cause remanded.*

GERBER and FORST, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

---

[8] We assume an appellate determination in the *Allen* Case will resolve issues raised in the *Webber* Case, since no appeal of the plaintiff class certification was filed in the *Webber* Case.