979 So.2d 246 (2007)
CITY OF TAMPA, individually, and as representative of all other Florida municipalities similarly situated, Appellant,
v.
Michael C. ADDISON and Richard T. Petitt, for themselves and all others similarly situated, Appellees.
No. 2D06-3168.
District Court of Appeal of Florida, Second District.
August 8, 2007.
*248 David L. Smith, City Attorney, and Jerry M. Gewirtz, Chief Assistant City Attorney, Tampa, for Appellant.
F. Wallace Pope, Jr., of Johnson, Pope, Bokor, Ruppel & Burns, LLP, Clearwater; Stephen A. Scott of Stephen A. Scott, P.A., Gainesville; Herbert T. Schwartz of Bailey & Galyen, Houston, TX; Joseph C. Moffa of Moffa & Gainor, P.A., Fort Lauderdale; and Brett Alan Panter and David Sampedro of Panter, Panter & Sampedro, P.A., Miami, for Appellees.
Alyssa A. Ruge, Assistant County Attorney, New Port Richey, for Amicus Curiae Pasco County.
Monterey Campbell, Hank B. Campbell, and Kristie Hatcher-Bolin of Gray Robinson, P.A., Lakeland, for Amici Curiae The Florida League of Cities, Inc.; City of Coral Gables, Florida; City of Gainesville, Florida; Leon County, Florida; and the Florida Association of Counties.
WALLACE, Judge.
The City of Tampa (the City) appeals a nonfinal order certifying a bilateral class action.[1] The circuit court entered the order in an action filed by Michael C. Addison and Richard T. Petitt (the Appellees). The Appellees are members of The Florida Bar. Each Appellee maintains an office for the practice of law within the jurisdiction of the City. In their action, the Appellees challenged the constitutionality of the City's occupational license tax as applied to attorneys practicing law in Tampa.
Once the action was at issue, the Appellees filed a motion seeking the certification of two classes: (1) a plaintiff class consisting of all lawyers subject to local occupational license taxes in all municipalities and counties within the State of Florida and (2) a defendant class consisting of all municipalities and counties within the State of Florida that levy such occupational license taxes on lawyers. After an evidentiary hearing on the motion, the circuit court certified the plaintiff class under Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3), and it certified the defendant class under rule 1.220(b)(1)(A).
On appeal, the City challenges the certification of both the plaintiff class and the defendant class on multiple grounds. All of the issues raised by the City are without merit, and we affirm the order of class certification. However, we write to address several of the City's arguments.

I. THE FACTS AND PROCEDURAL BACKGROUND
The City imposes on any person who maintains a permanent location or branch office within its borders an occupational license tax for the privilege of engaging in *249 business. See Tampa, Fla., Code of Ordinances, ch. 24, art. V (Occupational License Tax), § 24-101, et seq. The tax applies to attorneys at law, and the current amount of the tax assessed annually against each attorney is $289.40. § 24-120(0222)(d). The City enacted and enforces its ordinance under the enabling authority of chapter 205, Florida Statutes.
In addition to the City, more than 200 municipalities and thirty-five counties throughout the State of Florida currently have ordinances that impose occupational license taxes on attorneys. All of these ordinances have been enacted under the authority of chapter 205. However, the ordinances differ substantially in the amount of the tax, the method by which the amount of the tax is determined, and the options available to the taxing authority for enforcement if the tax is not paid. Moreover, some of the ordinances contain provisions that apply specifically to attorneys, while others apply generally to "professionals" or to all businesses. Although a detailed review of the provisions of these various ordinances is obviously beyond the scope of this opinion, it is interesting to note that the City's tax on attorneys is the highest in the state. At the other end of the scale, the lowest occupational license tax imposed on attorneys in the state is a mere $35.[2]
As members of The Florida Bar with offices for the practice of law within the City of Tampa, the Appellees are subject to the payment of the City's occupational license tax. On June 10, 2003, the Appellees filed a class action complaint against the City. The gist of the Appellees' complaint is as follows: The determination of the conditions under which a person may practice law and the regulation of lawyers who engage in the practice of law within the State of Florida are vested exclusively in the Supreme Court of Florida under article V, section 15, of the Florida Constitution of 1968, as amended. Accordingly, the City's ordinance operates as an unconstitutional precondition to or regulation of the practice of law in violation of article V, section 15. In the alternative, the Appellees claimed that chapter 205 does not authorize municipalities and counties to levy an occupational license tax on persons engaged in the practice of law within their respective jurisdictions. The Florida Constitution preempts all taxes to the state except ad valorem taxes unless authorized by general law. See art. VII, § 9(a), Fla. Const. of 1968. As an unauthorized local tax, the City's ordinance is thus unconstitutional as applied to attorneys.
The Appellees' complaint alleged claims for declaratory and injunctive relief, money had and received, and unjust enrichment. In addition to seeking class certification, the Appellees requested (1) a declaration that the City's tax and similar taxes imposed by the defendant class members are an unconstitutional regulation of the practice of law, (2) judgment in favor of the Appellees and the plaintiff class members for a refund of all taxes paid under such ordinances for the four years preceding the filing of the complaint, (3) an injunction against the City and the defendant class members prohibiting the enforcement of the City's ordinance and similar ordinances against attorneys, and (4) an award of attorney's fees and costs. The City moved to dismiss the complaint, but the circuit court denied the motion. The City then filed an answer that denied many of the complaint's *250 material allegations and that raised a number of affirmative defenses.

II. THE CLASS CERTIFICATION ORDER
In August 2005, the Appellees filed their motion for class certification with a supporting memorandum. Approximately six months later, the circuit court conducted an evidentiary hearing on the motion. Prior to the hearing, the City filed a forty-five-page memorandum of law in opposition to the motion. The City's memorandum outlined its opposition to the motion in considerable detail. In pertinent part, the City asserted that it lacked the ability to adequately protect the interests of each member of the proposed defendant class.
At the beginning of the hearing on the motion for class certification, the circuit court heard a motion in limine filed by the Appellees. In their motion, the Appellees requested an order prohibiting the City from introducing into evidence or commenting on the amount of income earned by each Appellee from the practice of law. The Appellees contended that the amount of income they earned from their respective law practices was irrelevant to any issue relating to certification of either of the proposed classes. In response, the City argued that evidence about the Appellees' incomes was relevant to prove that the amount of the City's occupational license tax was a very small percentage of the substantial incomes that the Appellees earned from their successful legal practices. Furthermore, the City claimed that this information was "germane to a lack of support for this lawsuit by the members of the Plaintiff class and militate[d] against a finding of `commonality,' `typicality,' and `representation of the interests of each member of the Plaintiff class,' all of which are relevant to determining whether to certify a class."[3] The circuit court granted the motion in limine and prohibited the City from introducing into evidence or commenting on the amount of the Appellees' incomes from their respective law practices.
After the conclusion of the evidentiary hearing, the circuit court entered the class certification order under review. In the order, the circuit court certified a plaintiff class defined as:
All persons who, on or after June 10, 1999, were duly admitted to practice law in the State of Florida by the Florida Supreme Court, and who maintained or maintain a permanent business location or branch office for the practice of law at a location subject to the jurisdiction of either the City of Tampa or of any other municipality that is a member of the defendant class certified in this action, or who practiced or practices law in any Florida county that is a member of the defendant class certified in this action, and who either paid or had paid on his or her behalf an occupational license tax or fee to any such municipality or county.
The circuit court also certified a defendant class defined as:
All incorporated Florida municipalities and all Florida counties that, at any time on or after June 10, 1999, had or now have, and enforced or now enforce, any ordinance under which it imposed or imposes a municipal or county occupational license tax or fee authorized by Chapter 205, Florida Statues [sic], on any attorney who maintained or maintains a permanent business location or *251 branch office for the practice of law at a location subject to the municipality's jurisdiction (as to municipalities) or engaged or engages in the practice of law at a location subject to the county's jurisdiction (as to counties).
The circuit court certified the plaintiff class under rule 1.220(b)(3) with regard to the refund claims and under rule 1.220(b)(2) with regard to the claims for declaratory and injunctive relief. The defendant class was certified under rule 1.220(b)(1)(A).[4] In its order, the circuit court estimated the number of the members of the plaintiff class as "more than fifty thousand members of The Florida Bar located throughout the state of Florida." The circuit court estimated that the defendant class "consists of at least 200 Florida cities and approximately 35 Florida counties."
In the certification order, the circuit court also addressed the issue of the appointment of counsel for the classes. The circuit court appointed six attorneys from five different law firms as class counsel for the plaintiff class. For the defendant class, the circuit court appointed a single attorney, Mr. Jerry M. Gewirtz, as class counsel. Mr. Gewirtz is the Chief Assistant City Attorney in the City Attorney's office. The certification order also provided that class counsel were to submit proposed class notices within thirty days.

III. THE REQUIREMENTS FOR CLASS CERTIFICATION
Before a class action can be certified, the trial court must conduct a rigorous analysis to determine that the elements of rule 1.220, the class action rule, have been met. See Ortiz v. Ford Motor Co., 909 So.2d 479, 480 (Fla. 3d DCA 2005). First, the trial court must conclude that the moving party has established the prerequisites to class representation described in rule 1.220(a). Under rule 1.220(a), the threshold requirements for class action representation are (1) that the members of the class are so numerous that separate joinder of each member is impracticable, (2) that the claim raises questions of law or fact common to each member of the class, (3) that the claim of the representative party is typical of the claim of each member of the class, and (4) that the representative party can fairly and adequately protect and represent the interests of other members of the class. Id. "These requirements are commonly referred to as the numerosity, commonality, typicality, and adequacy of representation elements of class certification." Marco Island Civic Ass'n v. Mazzini, 805 So.2d 928, 930 (Fla. 2d DCA 2001).
In addition to satisfying rule 1.220(a), the proponent of class certification must also satisfy one of the three subdivisions of rule 1.220(b). The subdivisions relevant to this case are contained in subsections (b)(1)(A), (b)(2), and (b)(3). Rule 1.220(b)(1)(A) requires that the prosecution of separate claims or defenses would create a risk of inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for the party opposing the class. Rule 1.220(b)(2) requires that the party opposing the class has acted or refused to act on grounds applicable to all class members, thereby making final injunctive or declaratory relief appropriate. Finally, rule 1.220(b)(3) requires that common questions of law or fact predominate over any individual questions of the separate members and that the class action must be superior to *252 other available methods for a fair and efficient adjudication of the controversy. The rule 1.220(b)(3) requirement parallels the commonality requirement under rule 1.220(a) because both require that common questions exist, but the predominance requirement in subsection (b)(3) "is more stringent since common questions must pervade." Wyeth, Inc. v. Gottlieb, 930 So.2d 635, 639 (Fla. 3d DCA 2006).
The party moving to certify the class has the burden of proving the propriety of class action status. See Marco Island, 805 So.2d at 930. There must be an evidentiary basis to support an order certifying a class when the nonmoving party contests class certification and it is not clear from the pleadings that a lawsuit qualifies for class action status. See Fla. Health Scis. Ctr., Inc. v. Elsenheimer, 952 So.2d 575, 581 (Fla. 2d DCA 2007); Ernie Haire Ford, Inc. v. Gilley, 903 So.2d 956, 959 (Fla. 2d DCA 2005). Although a trial court will generally be required to conduct an evidentiary hearing to determine whether to certify a class, the trial court's proper focus is on whether the requirements of rule 1.220 have been met and not on whether the moving party will prevail on the merits. See Samples v. Hernando Taxpayers Ass'n, 682 So.2d 184, 185 (Fla. 5th DCA 1996) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).
A "determination that a case meets the requirements of a class action is . . . within the trial court's discretion and will be reversed on appeal only if an abuse of discretion is shown." Bouchard Transp. Co. v. Updegraff, 807 So.2d 768, 771 (Fla. 2d DCA 2002) (citing Marco Island, 805 So.2d 928).

IV. DISCUSSION
On appeal, the City raises multiple issues concerning the certification of both the plaintiff class and the defendant class. We discuss four of the City's main arguments.
A. The Motion in Limine
The City argues that the circuit court erred in granting the motion in limine and in refusing to permit the City to introduce into evidence information concerning the amounts of income that each Appellee earned from the practice of law.[5] We agree with the Appellees that the circuit court properly excluded this evidence because it was not relevant to any issue at the hearing on class certification.
B. The Impact of the Sandstrom Cases
The City also contends that the circuit court abused its discretion in certifying the classes because the controlling case law supports the constitutionality of the imposition of occupational license taxes on members of The Florida Bar. See Sandstrom *253 v. City of Fort Lauderdale, 133 So.2d 755 (Fla. 2d DCA 1961) (Sandstrom I); Sandstrom v. City of Fort Lauderdale, 250 So.2d 341 (Fla. 4th DCA 1971) (Sandstrom II). In response, the Appellees argue that the facts of Sandstrom I and Sandstrom II are distinguishable from the facts of this case. The Appellees suggest that the authority of these cases is nothing more than an "illusion." Although these arguments are interesting, we decline to address them. The issue before us is whether the circuit court abused its discretion in certifying the classes under rule 1.220, not whether the Appellees have stated a cause of action or will prevail on the merits of their action. See Samples, 682 So.2d at 185.
C. The Issue of the Appellees' Standing
The City claims that the Appellees lack standing to represent attorneys practicing in each of the municipalities and counties throughout the State of Florida that impose an occupational license tax on attorneys. It is undisputed that the Appellees' individual claims are against only the City; the Appellees do not have claims against any other members of the proposed defendant class. Generally speaking, issues relating to standing and adequacy of representation arise where, as in this case, the plaintiffs seek to certify a bilateral class action, but the defendant class includes parties against whom the nominal plaintiffs have no claim. See Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083, 1095-96 (3d Cir.1975); La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 462 (9th Cir.1973); Clark v. McDonald's Corp., 213 F.R.D. 198, 221-27 (D.N.J. 2003); Thillens, Inc. v. Cmty. Currency Exch. Ass'n of Ill., 97 F.R.D. 668, 673-76 (N.D.Ill.1983); In re Gap Stores Sec. Litig., 79 F.R.D. 283, 293-95 (N.D.Cal.1978). However, in this case, we agree with the Appellees' argument that the enactment of the various occupational license tax ordinances under the authority of the same enabling legislation by all of the members of the proposed defendant class provides the requisite "juridical link" that authorizes the certification of the proposed defendant class. See La Mar, 489 F.2d at 466; DeAllaume v. Perales, 110 F.R.D. 299, 303-04 (S.D.N.Y.1986); Thillens, 97 F.R.D. at 675-76; Doss v. Long, 93 F.R.D. 112, 119-20 (N.D.Ga.1981); Mudd v. Busse, 68 F.R.D. 522, 527-28 (N.D.Ind. 1975), aff'd, 582 F.2d 1283 (7th Cir.1978) (table decision). See generally William D. Henderson, Reconciling the Juridical Links Doctrine with the Federal Rules of Civil Procedure and Article III, 67 U. Chi. L.Rev. 1347, 1354-59 (2000) (discussing the origin and application of the juridical links exception).
D. The Proof of the City's Adequacy as a Representative for the Defendant Class
Finally, the City argues that the circuit court abused its discretion in certifying the defendant class because the Appellees failed to carry their burden of proving that the City was an adequate representative for that class. The adequacy of the class representative to represent the interests of the class is one of the four prerequisites to class certification described in rule 1.220(a). In the context of class actions, due process requires that the class representative adequately represent the interests of the other class members. See Hansberry v. Lee, 311 U.S. 32, 42-43, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Smith v. Swormstedt, 57 U.S. (16 How.) 288, 303, 14 L.Ed. 942 (1853); Marco Island, 805 So.2d at 931. The inquiry into the adequacy-of-representation requirement is twofold: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation and (2) whether the *254 class representatives have interests antagonistic to those of the rest of the class. See Griffin v. Carlin, 755 F.2d 1516, 1533 (11th Cir.1985); Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 700 (M.D.Fla. 2000); Turner Greenberg Assocs., Inc. v. Pathman, 885 So.2d 1004, 1008 (Fla. 4th DCA 2004). The inquiry into adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157-58 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). "[A] class representative must be part of the class and `possess the same interest and suffer the same injury' as the class members." Id. at 625-26, 117 S.Ct. 2231 (alteration in original) (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)).
A motion to certify a defendant class raises heightened concerns relating to due process and the adequacy-of-representation requirement. One court explained some of these concerns by highlighting the differences between a defendant class and a plaintiff class:
[A] defendant class differs in vital respects from a plaintiff class, and . . . the very notion of a defendant class raises immediate due process concerns. When one is an unnamed member of a plaintiff class one generally stands to gain from the litigation. The most one can lose in cases where res judicata operates is the right to later bring the same cause of action. However, when one is an unnamed member of a defendant class, one may be required to pay a judgment without having had the opportunity to personally defend the suit. Although we believe that the Rule 23 requirements of adequacy of representation and notice to class members were designed to safeguard due process rights, we note the inherent difference in the nature of plaintiffs and defendants in most suits and suggest that a defendant class should be certified and such an action tried only after careful attention to these safeguards.
Marchwinski v. Oliver Tyrone Corp., 81 F.R.D. 487, 489 (W.D.Pa.1979).
Particular reasons for heightened concerns about adequacy of representation when the certification of a defendant class is sought stem from a feature unique to the defendant class  it is the plaintiff who selects the class representative for the defendants. As Professor Chafee noted, "[i]t is a strange situation where one side picks out the generals for the enemy's army." Zechariah Chafee, Jr., Some Problems of Equity 237 (1950). This anomalous circumstance naturally raises questions about the issue of adequate representation for the defendant class. Potential problem areas include (1) the selection of an unwilling class representative for the defendant class, (2) the selection of a class representative with an insufficient stake in the matter to warrant mounting a vigorous defense, and (3) the selection of a class representative with insufficient ability or financial resources to defend the action. See In re Gap Stores, 79 F.R.D. at 290; Note, Defendant Class Actions, 91 Harv. L.Rev. 630, 639-42 (1978). Added to these problems is the potential unfairness of requiring a reluctant defendant class representative to incur the additional legal fees and costs associated with defending a class action. See Debra J. Gross, Comment, Mandatory Notice and Defendant Class Actions: Resolving the Paradox of Identity between Plaintiffs and Defendants, 40 Emory L.J. 611, 622 (1991); Scott Douglas Miller, Note, Certification of Defendant Classes Under Rule 23(b)(2), 84 Colum. L.Rev. 1371, 1384-89 (1984).
*255 The adequacy of a proposed class representative and class counsel is not to be presumed in the absence of specific proof to the contrary. See Berger v. Compaq Computer Corp., 257 F.3d 475, 481-82 (5th Cir.2001). The proponent of class certification bears the burden of establishing that the adequacy-of-representation prerequisite  as well as all other requirements necessary to certify the proposed class  has been met. See id.; Execu-Tech Bus. Sys., Inc. v. Appleton Papers, Inc., 743 So.2d 19, 21 (Fla. 4th DCA 1999). See generally 5 James W. Moore et al., Moore's Federal Practice § 23.25[8] (3d ed. 1997) (reporting a split of authority among the federal courts concerning which party has the burden of proof on the issue of adequacy of representation but stating that most courts have held that the proponent of class certification bears the burden of proving adequacy as well as the other requirements for class certification). It follows that the plaintiff has the burden of proof on the issue of the adequacy of representation of a defendant class representative. See Luyando v. Bowen, 124 F.R.D. 52, 57-58 (S.D.N.Y.1989); Stewart v. Winter, 87 F.R.D. 760, 768-70 (N.D.Miss.1980); Tucker v. City of Montgomery Bd. of Comm'rs, 410 F.Supp. 494, 499 (M.D.Ala. 1976).
The inquiry into the adequacy-of-representation requirement has two prongs. The first prong focuses on the qualifications, experience, and ability of class counsel to conduct the litigation. The second prong addresses the issue of whether the class representatives have interests antagonistic to those of the rest of the class. It did not appear at the hearing  and the City did not contend  that the City had any interests that were antagonistic to the interests of the other members of the proposed defendant class. Thus the second prong of the adequacy requirement was satisfied. But the City did contend that its legal department lacked the necessary resources to defend the attack on the constitutionality of the occupational license tax as applied to attorneys on behalf of the more than 200 members of the proposed defendant class. Accordingly, the question of the qualifications, ability, and resources of the City Attorney's office to represent the proposed defendant class was an issue to be determined at the hearing on the Appellees' motion for class certification.
At the evidentiary hearing, Mr. Gewirtz conceded that the City Attorney's office employed between seventeen and twenty attorneys. However, he represented to the circuit court that only he and one other attorney were assigned to handle litigation full-time. Mr. Gewirtz argued that it would be "doing a great injustice to the City of Tampa" to force it to hire "at tremendous cost . . . a dream team of lawyers to compete with" counsel for the plaintiff class. However, after a review of the entire record, we conclude that the deposition testimony of Mr. Addison  one of the Appellees  included competent substantial evidence from which the trial court could find that the City was an adequate representative for the defendant class.[6]See Litvak v. Scylla Props., LLC, 946 So.2d 1165, 1171 n. 8 (Fla. 1st DCA 2006) (describing trial court ruling that requirement of fair and adequate representation was met based in part on finding that class counsel were experienced and included an attorney who had previously handled similar litigation); City of Pompano Beach v. Fla. Dep't of Agric., 2002 WL 1558217 *4 (Fla. 17th Cir.Ct. Jan. 24, 2002) (recognizing *256 class counsel's qualifications in the areas of complex litigation and class action litigation based on law firm biographies). See generally Ervin A. Gonzalez & Raymond W. Valori, Considerations in Class Certification, 72 Fla. B.J. 78, 80 (Mar. 1998) (describing the qualifications of class counsel necessary to ensure adequate representation); Linda S. Mullenix, Taking Adequacy Seriously: The Inadequate Assessment of Adequacy in Litigation and Settlement Classes, 57 Vand. L.Rev. 1687, 1739-43 (2004) (discussing the implementation of standards for assessing the adequacy of class representation).

V. Conclusion
For these reasons, the City has not demonstrated that the circuit court abused its discretion in certifying either the plaintiff class or the defendant class. Accordingly, we affirm the order of class certification.
Affirmed.
NORTHCUTT, C.J., and KELLY, J., Concur.
NOTES
[1] We have jurisdiction in accordance with Florida Rule of Appellate Procedure 9.130(a)(3)(C)(vi).
[2] These and other facts about the differences in the various ordinances enacted by the members of the proposed defendant class members were reported to us in one of the amicus briefs filed in this case.
[3] This quotation from the City's initial brief best summarizes the argument that it made on this point in the circuit court.
[4] The City has not argued that this matter does not meet the requirements for the certification of a defendant class under rule 1.220(b)(1)(A).
[5] In its notice of appeal of the class certification order, the City also attempted to appeal the order granting the Appellees' motion in limine. This court has dismissed the City's appeal of the order granting the motion in limine as an appeal from a nonfinal, nonappealable order. The trial court's ruling on the motion in limine does not "tag along" with the order of class certification simply because both motions were decided at the same hearing. Cf. RD & G Leasing, Inc. v. Stebnicki, 626 So.2d 1002, 1003 (Fla. 3d DCA 1993) (holding that an order denying a motion to dismiss, which was not an appealable, nonfinal order, did not become appealable based on the fortuity that the written order denying the motion to dismiss also contained a ruling on another motion which was an appealable, nonfinal order). However, the circuit court's order granting the motion in limine was a ruling on an evidentiary issue that arose during the hearing on the motion for class certification. Therefore, we may consider the order granting the motion in limine as an issue that was subsumed within the order granting class certification.
[6] Mr. Addison's deposition was admitted into evidence at the hearing on the motion for class certification.