IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DISCOUNT SLEEP OF OCALA, LLC
D/B/A MATTRESS WAREHOUSE,
INDIVIDUALLY, AND AS A
REPRESENTATIVE OF A CLASS
OF ALL SIMILARLY SITUATED OTHERS,
AND DALE W, BIRCH, INDIVIDUALLY, ETC.,

        Appellants/Cross-Appellees,

 v.                                  Case No.  5D17-497

CITY OF OCALA, FLORIDA,

        Appellee/Cross-Appellant.

_____/

Opinion filed January 5, 2018

Non-Final Appeal from the Circuit
Court for Marion County,
Lisa D. Herndon, Judge.

Derek A. Schroth, James A. Myers and
Sasha O. Garcia, of Bowen/Schroth, Eustis,
for Appellants/Cross-Appellees.

George Franjola and Patrick G. Gilligan, of
Gilligan, Gooding, Franjola & Batsel, P.A.,
Ocala, for Appellee/Cross-Appellant.


ORFINGER, J.

       Discount Sleep of Ocala LLC, d/b/a Mattress Warehouse, and Dale W. Birch,

individually and as representatives of a putative class of others similarly situated

(collectively "Appellants"), appeal from a non-final order denying class certification. We reverse the order denying class certification. On the City of Ocala's ("the City") cross-appeal, we affirm without further discussion.

## FACTS

This case concerns the City's imposition of a fire service user fee charged to customers of its city-owned utility. Since 2006, the City has enacted several ordinances that established, repealed, and later reinstated the fire service user fees. In 2014, Appellants filed a class action lawsuit against the City, challenging the validity of Ordinance 2010-43, which repealed an earlier ordinance and reinstated the previously repealed fire service fees. The trial court dismissed Appellants' original complaint with prejudice based on the statute of limitations. This Court reversed the order of dismissal, concluding that Appellants' complaint was timely filed. See Disc. Sleep of Ocala, LLC v. City of Ocala, 200 So. 3d 156, 157 (Fla. 5th DCA 2016).[1]

On remand, Appellants filed a second amended complaint, seeking a declaration that the fire service user fee enacted by the City and collected from them and all other City utility customers as part of the monthly utility bill is invalid, illegal, and unconstitutional. Appellants further asked the court to order the City to refund the fees collected. Appellants also filed a second motion for class certification, which the trial court denied after conducting an evidentiary hearing. The trial court concluded that Appellants

_____

[1] Our decision in Discount Sleep of Ocala, LLC, which determined the fire service user fee was repealed based on the plain language of Ordinance 6015, governs this case. See Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992) (explaining that appellate courts' decisions "represent the law of Florida unless and until they are overruled by [the Florida Supreme] Court"). Thus, the trial court was without authority to find that the original fire service user fee was never repealed.

2

lacked standing to represent the putative class members, and that the class could not be certified because Appellants failed to satisfy the commonality, typicality, and adequacy prongs of the class certification test. The trial court further found that Appellants failed to prove that common issues predominated over individual questions and that a class action was the superior means of adjudicating the controversy. As we will explain, we disagree.

## ANALYSIS

A. <u>Standing</u>.

The standing of a plaintiff to bring an action is a threshold inquiry that must be made before addressing whether the case is properly maintainable as a class action. Ferreiro v. Phila. Indem. Ins. Co., 928 So. 2d 374, 376 (Fla. 3d DCA 2006). "A trial court's decision as to whether a party has satisfied the standing requirement is reviewed de novo." Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 116 (Fla. 2011).

"To meet the . . . standing requirement, a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." Denney v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). The putative class representative must establish that a case or controversy exists between him or her and the defendant that will continue throughout the litigation. Id. at 117. A case or controversy exists if a party alleges an actual or legal injury that the relief sought will address. Id. Here, in their second amended complaint, Appellants alleged they and the other putative class members paid the fire service user fees that the City charged and continues to charge. Appellants have alleged an economic injury, fulfilling

3

the actual injury requirement of standing in their claim for declaratory relief and damages against the City. See id. ("In this case, Sosa has suffered an economic injury, fulfilling the actual injury requirement of standing.").

The trial court erred in determining that the class should not be certified because the class could not include members who "paid the fire service user fee but who are no longer required to do so." Here, even if a customer no longer pays the fire service user fee, the customer would still be able to be part of the class, or subclass, if the customer paid the fire service user fee during the relevant time period. Those members suffered the same injury, i.e., their payment of the allegedly invalid fire service user fee; their injury is concrete and particularized; and their injury would be redressed by the requested refund.

B.     Rule 1.220(a).

After establishing standing, but before a class may be certified, the trial court must conduct a "rigorous analysis" to determine whether the class representative and putative class members meet the requirements for class certification pursuant to Florida Rule of Civil Procedure 1.220(a).[2] Terry L. Braun, P.A. v. Campbell, 827 So. 2d 261, 265 (Fla.

---

[2] Rule 1.220(a) provides:

> **(a) Prerequisites to Class Representation.** Before any claim or defense may be maintained on behalf of a class by one party or more suing or being sued as the representative of all the members of a class, the court shall first conclude that (1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the

4

5th DCA 2002). These elements are commonly referred to as the numerosity, commonality, typicality, and adequacy of representation elements of class certification. InPhyNet Contracting Servs., Inc. v. Soria, 33 So. 3d 766, 771 (Fla. 4th DCA 2010). The party seeking class certification bears the burden of satisfying all the requirements of rule 1.220(a). Campbell, 827 So. 2d at 265. We review the trial court's order denying class certification for an abuse of discretion, but examine a trial court's factual findings for competent, substantial evidence, and review conclusions of law de novo. Sosa, 73 So. 3d at 102-03, 105. "Although a trial court will generally be required to conduct an evidentiary hearing to determine whether to certify a class, the trial court's proper focus is on whether the requirements of rule 1.220 have been met and not on whether the moving party will prevail on the merits." City of Tampa v. Addison, 979 So. 2d 246, 252 (Fla. 2d DCA 2007); see Sosa, 73 So. 3d at 105; Morgan v. Coats, 33 So. 3d 59, 63-64 (Fla. 2d DCA 2010).

1. Commonality.

The trial court found that Appellants failed to meet the commonality prong because some class members are no longer subject to the fee. As such, the trial court determined that their claims could not be based on the same legal theory as Appellants' theory.

The primary concern in determining commonality is whether the representative members' claims arise from the same practice or course of conduct that gave rise to the other claims, and whether the claims are based on the same legal theory. Sosa, 73 So. 3d at 107. Importantly,

> representative party can fairly and adequately protect and
> represent the interests of each member of the class.

5

> [t]he threshold of the commonality requirement is not high.  See Broin v. Philip Morris Cos., Inc., 641 So. 2d 888, 890 (Fla. 3d DCA 1994) (citing Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 473 (5th Cir. 1986)). A mere factual difference between class members does not necessarily preclude satisfaction of the commonality requirement.  See Morgan, 33 So.3d at 64 (citing Leszczynski v. Allianz Ins., 176 F.R.D. 659, 671 (S.D. Fla. 1997)). Individualized damage inquiries will also not preclude class certification.  See id. at 65; Ouellette v. Wal-Mart Stores, Inc., 888 So. 2d 90, 91 (Fla. 1st DCA 2004); Broin, 641 So. 2d at 891 ("Entitlement to different amounts of damages is not fatal to a class action." (citing Cohen v. Camino Sheridan, Inc., 466 So. 2d 1212, 1214 (Fla. 4th DCA 1985))).

Id.  Instead, the purpose of the commonality requirement is to determine "whether there is a need for, and benefit derived from, class treatment."  Id.  This requirement "is satisfied if the common or general interest of the class members is in the *object* of the action, the *result sought*, or the general *question* implicated in the action."  Id.

In this case, Appellants challenge the validity of the fire service user fees that the City charged and continues to charge.  They allege that they and the members of the putative class have a right to a refund of the unlawful fees paid to the City pursuant to the City's common course of conduct of uniformly billing and collecting the fire fees on its utility bills.  It is immaterial that there are members of the proposed class who are no longer subject to the fee.  Not all questions of law or fact raised in the litigation need be common because even a single common question will satisfy the commonality requirement.  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 369 (2011).  "The requirement is met if the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated."  Clausnitzer v. Fed. Exp. Corp., 248 F.R.D. 647, 656 (S.D. Fla. 2008) (quoting Collins v. Int'l Dairy Queen, Inc., 168 F.R.D. 668, 673-74 (M.D. Ga. 1996)); see also Mohamed v. Am. Motor Co., LLC, 320 F.R.D. 301, 313-14 (S.D. Fla. 2017) (finding commonality

6

requirement was satisfied where case revolved around common course of conduct and involved several overarching questions that were common to almost every member of class). While there may be some individualized damage differences, Appellants presented a common issue of law and fact regarding the City's collection of the fire service user fees on its utility bills, which satisfies the "low hurdle" commonality requirement. See Morgan, 33 So. 3d at 64.

    2. Typicality.

As to the typicality prong, the trial court determined that the testimony presented at the evidentiary hearing established that ad valorem taxes would likely be increased on real property in the city to make up for loss of revenue if the fire service user fee was declared invalid. The court thus reasoned that if the fire service user fee was refunded, it would "likely be paid in its entirety by the property owning ad valorem taxpayers and not by all of the beneficiaries of the fire service." As a result, the trial court concluded that Appellants' success would be adverse to the interests of the other members of the putative class who pay ad valorem taxes, and thus not typical of the class claims.

In analyzing typicality, the key inquiry is "whether the class representative possesses the same legal interest and has endured the same legal injury as the class members." Sosa, 73 So. 3d at 114. "The test for typicality, like the test for commonality, is not demanding and focuses on the general similarity between the named plaintiff[s]' legal and remedial theories and the theories of those whom they purport to represent." Morgan, 33 So. 3d at 65 (quoting Basco v. Wal-Mart Stores, Inc., 216 F. Supp. 2d 592, 599 (E.D. La. 2002)). This requirement is satisfied when there is a strong similarity in the legal theories between the class representatives' claims and class members' claims and

7

"when the claims of the class representative and class members are not antagonistic to one another." Sosa, 73 So. 3d at 114-15. "Mere factual differences between the class representative's claims and the claims of the class members will not defeat typicality." Id. at 114.

In this case, Appellants' and the putative class members' claims are based on the same legal theory—the alleged invalidity of the ordinance establishing the fire service user fee—that arose from the same course of conduct that caused a similar injury—the City uniformly billing and collecting the fire fees on utility bills that were sent to Appellants and the putative class members. The trial court's conclusion that "ad valorem taxes would likely be increased on developed properties within the City in order to make up for the loss of funding if the fire service user fee was declared invalid" does not preclude a finding of typicality. See Graham v. Pyramid Healthcare Sols., Inc., No. 8:16-CV-1324-T-30AAS, 2017 WL 2799928, at *5 (M.D. Fla. June 28, 2017) ("Even if the fact patterns are unique to each claim, the typicality requirement will be satisfied if the class representative and class members experienced the same unlawful conduct."). Appellants' claims are not "antagonistic" to real property owners in the city. In the event of a judgment in favor of Appellants, the City has options other than an ad valorem tax increase to raise sufficient revenues to cover a refund, if ordered.[3] See Nelson v. Wakulla Cty., 985 So. 2d 564, 577 (Fla. 1st DCA 2008) (rejecting in class notice trial court's statement "that this case is, in

---

[3] As the trial court noted in its order, there are other options to cover the refunds, including exploring an enactment, pursuant to chapter 197, of a lawfully authorized "special assessment"; using a portion of the city "reserves"; implementing bonds; selling the City's "surplus property"; transferring funds from other city accounts; merger with other fire departments; pension reform; and choosing to reduce or eliminate certain services.

8

essence, a suit by taxpayers, as a class, against themselves"); City of Port St. Lucie v. Zlinkoff, 821 So. 2d 1130, 1132 (Fla. 4th DCA 2002).

In the end, the claims of the class representatives and putative class members are not antagonistic, and the trial court erred in concluding that this element of rule 1.220(a) had not been established. See Colomar v. Mercy Hosp., Inc., 242 F.R.D. 671, 677 (S.D. Fla. 2007) ("[T]ypicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case."). The trial court's consideration of the merits during the class certification review must not result in a shift in focus from deciding whether a litigant's claim is suited for class certification. Sosa, 73 So. 3d at 106; Freedom Life Ins. Co. of Am. v. Wallant, 891 So. 2d 1109, 1115 (Fla. 4th DCA 2004). The trial court should not have focused, as it did here, on how the City would address the financial impact of an adverse judgment when it considered whether this claim was suited for class certification. See Roper v. Consurve, Inc., 578 F.2d 1106, 1114 (5th Cir. 1978) (explaining that because considering financial impact of judgment presupposes success on merits and requires trial court to express opinion on harshness of particular remedy prior to trial itself, it ought to be allowed only in extreme cases), aff'd sub nom. Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326 (1980).

3. Adequacy of Representation.

Rule 1.220(a) also requires that the class representatives demonstrate they can fairly and adequately protect and represent the interests of each member of the class. This inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). In considering this requirement, the named plaintiffs must demonstrate both that (1) their

9

interests are not antagonistic to those of the rest of the class and (2) class counsel is qualified, experienced, and generally able to adequately conduct the proposed litigation. Sosa, 73 So. 3d at 115.

> a. Appellants Can Fairly and Adequately Represent the Class.

A "class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." Addison, 979 So. 2d at 254. Satisfaction of the commonality and typicality requirements provides "strong evidence that [the named plaintiffs] adequately represent the class." Henderson v. Thomas, 289 F.R.D. 506, 511 (M.D. Ala. 2012). Additional proof that the named plaintiffs adequately represent the class exists when the same relief is sought for plaintiffs and all class members. Broin, 641 So. 2d at 892. Minor conflicts among class members will not defeat class certification. Valley Drug v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). To render representative plaintiffs inadequate, a conflict must be "fundamental" and "go[ ] to the specific issues in controversy." Id. A fundamental conflict exists when a defendant's alleged conduct has benefitted some class members, but harmed other members or when the economic interests and objectives of the named representatives differ significantly from those of other class members. Id.

Relying on Smith Lake Shores Village, LLC, v. Marion County, 7 So. 3d 595 (Fla. 5th DCA 2009), the trial court determined that Appellants could not fairly and adequately represent the class because in the event Appellants prevail, the class members who pay ad valorem taxes would fund the judgment and benefit the class members who do not pay ad valorem taxes or no longer reside in the city, thereby, creating an impermissible conflict. However, Smith Lake is distinguishable. There, the plaintiff theorized that a

special assessment for fire rescue services was unlawful because "the apportionment methodology" used by the county was "arbitrary" in ways that were disadvantageous to the plaintiff. 7 So. 3d at 596. This Court determined that the plaintiff had a conflict with the class members since a judicial determination *based on the plaintiff's theory* could result in reapportionment, thereby, reducing the plaintiff's assessment to the detriment of the other class members. Id. ("There is a single aggregate assessment that will have to be paid and diminution of the share of any particular category of owner will result in a greater share of assessment for the others in the pool."). In this case, Appellants do not make a similar claim. Appellants are seeking the complete invalidation of the fire service user fees and the same relief for themselves and the other class members. Thus, no conflict exists between Appellants and the class.

While Appellants are ad valorem taxpayers who may not want to see their property taxes increased in the event of a judgment ordering the fees to be refunded, that is not the relevant inquiry for class certification purposes. Instead, the "relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation." Roper, 578 F.2d at 1112. Here, the evidence demonstrated that Appellants are interested in this case, they have an understanding of the case, and they represented that they will "litigate vigorously" to obtain a successful result for each member of the class. Contrary to the trial court's findings, it is immaterial to the limited inquiry on whether the court should certify the class whether Appellants attended city council meetings or knew the name of the mayor or any city councilmen.[4]

_____

[4] The trial court placed some weight on Appellants' failure to attend the evidentiary hearing. However, this does not demonstrate that they cannot adequately represent the class members. Inherent in the adequacy requirement is "an expectation of a 'minimal

11

E.g., <u>Brooks v. S. Bell Tel. & Tel. Co.</u>, 133 F.R.D. 54, 58 (S.D. Fla. 1990) (noting that to meet adequacy showing, plaintiffs must demonstrate that they will vigorously prosecute action, and provide both adequate financing and competent counsel).

  b. <u>Class Counsel's Ability To Effectively Advocate For The Class</u>.

Class counsel's prior experience in a similar case is competent, substantial evidence of adequacy. <u>Addison</u>, 979 So. 2d at 256 (citing <u>Litvak v. Scylla Props., LLC</u>, 946 So. 2d 1165, 1171 n.8 (Fla. 1st DCA 2006) (noting adequacy met where class counsel were experienced and included attorney who had previously handled similar litigation)). The trial court correctly found that class counsel was competent to represent Appellants in this litigation. However, the trial court determined that class counsel could not adequately represent the class because if Appellants prevailed, the City would be required to create a common fund for the refunds, which would be used in part to pay the attorney's fees, creating an impermissible conflict of interests between class counsel and a portion of the class. This determination was erroneous. Our courts recognize that attorneys in class actions cases are entitled to attorneys' fees from a common fund. E.g., <u>Tenney v. City of Miami Beach</u>, 11 So. 2d 188, 190 (Fla. 1942) (recognizing that attorneys are entitled to attorneys' fees from common fund in class action tax challenges). There

---

level of interest in the action.'" <u>Leibell v. Miami-Dade Cty.</u>, 84 So. 3d 1078, 1085 (Fla. 3d DCA 2012) (quoting <u>Massengill v. Bd. of Educ., Antioch Cmty. High Sch.</u>, 88 F.R.D. 181, 186 (N.D. Ill. E.D. 1980). There is no requirement that class representatives attend or testify at the evidentiary hearing. In fact, in deciding class certification, a trial court is usually "restricted" to the substance of the class certification motion. <u>Sosa</u>, 73 So. 3d at 104-05. Rather, the evidentiary hearing is primarily used to evaluate the basis for class certification when there may be questions regarding whether common issues predominate or whether the proposed class representatives provide a superior method for the fair and efficient adjudication of the controversy. <u>Id.</u> at 105.

is no conflict of interest simply because the attorney's fees would be paid from a common fund.

    C. Rule 1.220(b).

In addition to satisfying rule 1.220(a), Appellants were also required to satisfy one of the three subdivisions of rule 1.220(b). Fla. R. Civ. P. 1.220(b); Sosa, 73 So. 3d at 106; Campbell, 827 So. 2d at 269. Here, Appellants sought certification under rule 1.220(b)(2) or (b)(3).[5] The trial court determined that certification under rule 1.220(b)(2) was not

---

[5] Rule 1.220(b) reads in relevant part:

**(b) Claims and Defenses Maintainable.** A claim or defense may be maintained on behalf of a class if the court concludes that the prerequisites of subdivision (a) are satisfied, and that:

. . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate; or

(3) the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. The conclusions shall be derived from consideration of all relevant facts and circumstances, including (A) the respective interests of each member of the class in individually controlling the prosecution of separate claims or defenses, (B) the nature and extent of any pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated, (C) the desirability or undesirability of concentrating the litigation in the forum where the subject action is instituted, and (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class.

appropriate because Appellants "had done nothing to address their purported dissatisfaction with the fire service user fee until this suit was filed," and concluded that the case actually relates predominantly to money damages.

"Rule 1.220(b)(2) requires that the party opposing the class has acted or refused to act on grounds applicable to all class members, thereby making final injunctive or declaratory relief appropriate." Addison, 979 So. 2d at 251. Rule 1.220(b)(2) certification is "appropriate only for the resolution of class claims that rest on the same grounds and apply equally to all members of the class." Wallant, 891 So. 2d at 1117 (citing Holmes v. Cont'l Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983) (emphasizing homogeneity of claims and interests)).

The relief sought here is primarily injunctive or declaratory. Appellants assert that the City charged and continues to charge illegal, invalid, and unconstitutional fire service user fees, which are uniformly billed on its utility bill to all the members of the class. Prior to filing suit, Appellants alleged that they asked the City to stop charging the fire fees, and the City refused. Monetary relief is incidental to the declaratory relief, which is the focus of Appellants' class petition. See Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998) (explaining that incidental damages are those damages that flow directly to class members once liability to class as whole on claims forming basis of injunctive or declaratory relief is established).

The trial court also determined that certification under rule 1.220(b)(3) was not appropriate because Appellants did not "satisfy the requirement of Rule 1.220(b)(3) that class representation 'is superior to other available methods for the fair and efficient adjudication of this controversy.'" To qualify for certification under rule 1.220(b)(3), a

14

class must meet two requirements: 1) the common questions must predominate over any questions affecting only individual members, and 2) the class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. Campbell, 827 So. 2d at 269. The rule provides a non-exhaustive list of factors pertinent to the predominance and superiority requirements. Id. Concerning predominance, the Florida Supreme Court explained in Sosa that "a class representative establishes predominance if he or she demonstrates a reasonable methodology for generalized proof of class-wide impact. A class representative accomplishes this if he or she, by proving his or her own individual case, necessarily proves the cases of the other class members." 73 So. 3d at 112 (citation omitted). The class representative's case must not merely raise a common question; the proof of the class representative's case must also "answer[ ] the question." Porsche Cars N. Am., Inc. v. Diamond, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014) (citing Sosa, 73 So. 3d at 111); see Dukes, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." (citation omitted)). In this case, common issues predominate over individual ones. The City treated Appellants and the putative class members in the same manner. If Appellants prove their case, they will prove the case for each class member. Thus, predominance is satisfied.

"[T]o find superiority, a court must find all other methods of resolving the issues in a case to be inferior to a class action." Kia Motors Am. Corp. v. Butler, 985 So. 2d 1133, 1141 (Fla. 3d DCA 2008) (quoting Sanneman v. Chrysler Corp., 191 F.R.D. 441, 455

(E.D. Pa. 2000)).  The purpose of the superiority requirement is to ensure the "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness." Amchem Prods., Inc., 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory committee notes).  In examining superiority, the trial court should consider "(1) whether a class action would provide the class members with the only economically viable remedy; (2) whether there is a likelihood that the individual claims are large enough to justify the expense of separate litigation; and (3) whether a class action cause of action is manageable."  Sosa, 73 So. 3d at 116.  Here, the superiority factors weigh in favor of class certification.

There are potentially more than 22,000 class members.  Their individual claims, which are as small as $14.30 per month (amounting to $171.60 a year), would not justify filing separate actions.  Allowing Appellants to proceed with a class action provides an economically feasible remedy, given the modest potential individual damage recovery for each class member.  Further, because the potential class members' claims are based on the same common course of conduct by the City against Appellants, a class action would be a more manageable and more efficient use of judicial resources than individual claims.  Therefore, Appellants and the putative class members satisfy rule 1.220(b)(3)'s superiority requirement.

Still, the trial court denied class certification based on the "necessity doctrine," concluding that if Appellants prevail on their individual claims, the judgment would apply to all who paid the fire fees, thus eliminating the need for Appellants' challenge to proceed as a class action.  See Gayle v. Warden Monmouth Cty. Corr. Inst., 838 F.3d 297, 309 (3d Cir. 2016) (collecting cases); M.R. v. Bd. of Sch. Comm'rs of Mobile Cty., 286 F.R.D.

16

510, 518 n.11 (S.D. Ala. 2012) (collecting cases); Daniel Tenny, Note, <u>There Is Always a Need: The "Necessity Doctrine" and Class Certification Against Government Agencies</u>, 103 Mich. L. Rev. 1018, 1019 n.8 (2005) (collecting cases).  Applying this doctrine, courts sometimes refuse to certify classes in public law cases because government agencies can be expected to implement their rulings in good faith. <u>E.g.</u>, <u>Dionne v. Bouley</u>, 757 F.2d 1344, 1357 (1st Cir. 1985); <u>Alliance to End Repression v. Rochford</u>, 565 F.2d 975, 980 (7th Cir. 1977); <u>Mills v. Dist. of Columbia</u>, 266 F.R.D. 20, 22 (D.D.C. 2010).  However, the application of this doctrine is discretionary—not automatic—and must be administered with careful attention to the enforcement dynamics of particular disputes.  <u>E.g.</u>, <u>Dionne</u>, 757 F.2d at 1356 (recognizing discretion of federal courts to "deny Rule 23(b)(2) certification where it is a formality or otherwise inappropriate" but emphasizing need for attention to "situations where a class certification under Rule 23(b)(2) will arguably be unnecessary, but where other considerations may render a denial of certification improper").

Class certification is appropriate in this case.  "It is well-recognized in Florida that a taxpayer may properly bring a class action on behalf of himself and other taxpayers similarly aggrieved when the same legal questions are involved and the character of relief is applicable to all."  <u>State ex rel. Devlin v. Dickinson</u>, 305 So. 2d 848, 850 (Fla. 1st DCA 1974); <u>see, e.g.</u>, <u>Dep't of Rev. v. Kuhnlein</u>, 646 So. 2d 717, 721 (Fla. 1994) ("We also are unpersuaded by the State's claim that a refund claim cannot be cast as a class action.  Any constitutional claim affecting a class of persons can be the proper subject of a class action, provided other procedural requirements are met, as they were here.").  While the benefits of the injunctive and declaratory relief sought by Appellants would run to the

17

putative class without class certification, the requested refund relief would not. See, e.g., Zlinkoff, 821 So. 2d at 1131. ("Taxpayers, such as the plaintiff class, are normally entitled to a refund of taxes paid pursuant to an invalid assessment."). Thus, class certification is authorized here under either rule 1.220(b)(2) or (b)(3).

## CONCLUSION

For these reasons, we conclude that the trial court erred by denying Appellants' motion for class certification. We hold that Appellants established standing as well as sufficiently met all of the requirements set forth in rule 1.220. We reverse and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED for further proceedings.

TORPY and EISNAUGLE, JJ., concur.